## Fidelity & Casualty Co. of New York v. Downey.

Oct. 11, 1940.

Churchill Humphrey, Judge.

William Mellor and Jerry A. Hogan for appellant.

Davis Edwards for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Affirming.

This is an appeal from a judgment by which the
appellees, Mary C. Downey, a lunatic, and Lloyd W.
Gates, her brother and present committee, were
awarded $10,000 with interest at six per cent per annum
from the date of the judgment against the estate of
Charles Downey, deceased, former committee of his
wife, Mary C. Downey, and against the appellant as
surety on his bond, for assets of Mrs. Downey's estate

received by her husband and committee and not accounted for. No appeal is prosecuted by the estate of Charles Downey.

Mrs. Downey and her husband lived together for a number of years at her home in Middletown. She became of unsound mind in April of 1924 and was confined to the Hord Sanitorium, where she remained until 1930, at which time she was removed to the asylum for the insane at Lakeland, where she now is. The adjudication of lunacy took place in April, 1928, at which time her husband was appointed her committee, appellant signing his bond as surety in the sum of $10,000.

Downey did not file an inventory of the estate but in December, 1931, filed a final settlement in the Jefferson County Court, which was approved, and that court entered an order discharging the committee and the appellant as surety on his bond. In the settlement filed by him Downey as committee charged himself with $5,450 representing the proceeds of notes owing to Mrs. Downey and paid to him but credited himself with $7,143.50 paid to the Hord Sanitorium for the care and maintenance of his wife during the time she was there confined. He also credited himself with $888.38, taxes paid in behalf of his ward and six other smaller credits. It is unnecessary to consider or mention in this opinion any credit except the larger one in view of the conclusions we have reached.

Many interesting questions of law and fact are presented by the briefs and many different items are involved which the appellees claim the committee received but did not account for, all of which are denied by appellant, but we find it necessary to consider in this opinion only two of these items together with the credit of $7,143.50 claimed by the committee since the conclusions we have reached with reference thereto, when taken in connection with the admitted receipt of $5,450 by the committee and the proper allowance of interest on funds in the committee's hands, demonstrate that there was an ultimate liability of $10,000 on the part of the surety regardless of the other items involved. The two items referred to, which were charged to the committee by the trial court, and which the appellant claims was error, are 1) an item of $1,125 paid to Charles Downey before his qualification as committee of his

wife, the appellant admitting that the money was received by Downey but that he was not properly chargeable with it as committee, and 2) an item of $4,250 which appellees claim was paid to Downey before he qualified as committee and as to which the appellant contends, first, that there is no competent evidence to show that Downey received it and, second, that even though the payment of this sum to Downey was properly established nevertheless there is no liability on its part therefor. Appellant contends that there is no liability on its part as to these items because, even though they were actually received by Downey prior to his qualification as committee, the appellee's proof failed to establish the solvency of Downey at the time he qualified as committee or at any time thereafter.

It is conceded by appellant that as to sums paid to Downey on behalf of his wife prior to his appointment as committee he became a debtor of his wife and that under the rule laid down in Johnson v. Hicks' Guardian, 97 Ky. 116, 30 S. W. 3, it is liable for such indebtedness to his wife if he was solvent at the time of his appointment or at any time thereafter. The appellant contends, however, that the burden of proof as to solvency was on the appellees and that they failed utterly to meet this burden. We may point out at the outset that appellant's position as to the failure of the proof to establish such solvency with any degree of certainty seems to be well taken, since the commissioner in his report stated that it was impossible ''to balance what Downey owned against what he owed and to say as a demonstrable mathematical proposition that he was solvent,'' and the proof appears to justify this finding. In short, it is a matter of guess work to determine from the proof whether he was solvent or insolvent. This question of the burden of proof as to Downey's solvency or insolvency is therefore the first question to be determined.

There is much able and elaborate argument in the respective briefs as to whether or not there is a genuine presumption of law that every man is solvent and as to whether or not such presumption is sufficient to prevail in the absence of proof and to relieve the appellees of the burden of going forward with proof, but we find it unnecessary to consider this much disputed proposition, since it is our conclusion that the burden of proof was on the committee and his surety to establish in-

solvency rather than on the appellee to establish solvency. When Downey qualified as committee of his wife he assumed the burden of collecting all valid indebtedness owing to her including the indebtedness of himself. In this action against his estate and his surety, wherein it is claimed that he and his surety are not liable for the failure to collect the indebtedness, the burden is on his estate and surety to establish the fact that it was uncollectible by reason of his insolvency. Upon his qualification as committee he should have inventoried and charged himself with this indebtedness if he was solvent or should have shown that he was not properly chargeable with the indebtedness by reason of his insolvency. It might be that, had this been done, a prima facie case of insolvency would have been established such as the appellees would have been required to rebut in order to prevail in this action, a question not decided. It appears to us that the correct rule was stated in Howell v. Anderson, 66 Neb. 575, 92 N. W. 760, 762, 61 L. R. A. 313 in which the court speaking of an indebtedness owing by one who later qualified as administrator said:

> " 'The money collected by him while professing to act as agent of the administrator in Missouri, and for which he had not accounted when he became administrator, was a claim in favor of his trust, which he should have inventoried and charged himself with; and if, by the use of due diligence, all or any part of the claim could have been saved to the estate, his sureties are therewith chargeable, but, if he was hopelessly insolvent, they do not become liable therefor, the burden as to the question of insolvency being on the administrator and his sureties.' "

Numerous authorities reviewed in the cited case seem to assume that the burden is on the surety in this character of case to establish insolvency and not on the plaintiff to establish solvency. Downey being indebted to the estate at the time of his qualification as committee, it was peculiarly within his knowledge as to whether or not he was solvent and whether or not the indebtedness was collectible. This being true, he should have inventoried his indebtedness to his ward and, if he was insolvent, that fact should have been shown in his settlement. Having failed to do this, it is our conclusion that

the burden was on his estate, and on his surety who seeks to be absolved, to establish such insolvency.

Coming now to the item of $4,250 with which appellant was charged, we find that there is ample evidence to support the finding that Downey received this money if the evidence is competent. This evidence consists of the testimony of Lloyd W. Gates, the present committee, and brother, of Mrs. Downey who testified that one Ballantine, who owed Mrs. Downey certain lien notes as a part of the purchase price of a ferry sold to him by Gates and Mrs. Downey, paid to him for Mrs. Downey certain of the notes and interest aggregating this sum and that he paid this sum over to Charles Downey. It is contended by appellant that this testimony is incompetent because Gates was testifying for himself as to the payment of money to Downey, a deceased person, in violation of Subsection 2 of Section 606, Civil Code of Practice. It is conceded by appellant that the mere fact that Gates is now committee and is now a plaintiff in the action is not in itself sufficient interest to disqualify him as a witness but its contention is that as Mrs. Downey has no children he is an interested person because there is a possibility that he might inherit from her and, secondly, that Gates was testifying for himself because the money was paid to him and there is an ultimate liability on his part to Mrs. Downey's estate in the event it was not paid over to her and he could be held accountable to her estate for any money he received for her. We find no merit whatever in the first reason advanced, since there is only a bare possibility that he might inherit from her as an heir at law. In the first place she might outlive him and in the second place it is possible that she made a will disposing of her property before she became of unsound mind. In Hicks et al. v. Oak's Adm'r et al., 233 Ky. 27, 24 S. W. (2d) 917, it was held that the interest that would disqualify a witness must be direct and certain and that he was not disqualified because he might in the future become an heir of a living person. That case is conclusive of the first reason advanced to establish Gates' interest. The case of Cain v. Levy, 179 Ky. 32, 200 S. W. 326, is relied on by appellant to support its second reason advanced as to the interest of Gates. In that case a joint maker of a note, not sued, attempted to testify for the other joint maker who was sued concerning a transaction with a de-

ceased person and this testimony was held to be incompetent since the witness was testifying for himself, even though he was not a party to the action, inasmuch as the defeat of the plaintiff's claim would defeat any possibility of the witness being liable by way of contribution to the defendant co-maker. It must be admitted that this case would be somewhat persausive in favor of appellant's position were it not that other evidence in the case is sufficient to establish non interest on Gates' part, or at least to minimize such interest to the extent that it is not sufficiently direct and certain to be disqualifying. The evidence we refer to is a release appearing in the record signed by Lloyd W. Gates and his wife and by Downey as committee for his wife releasing of record the lien note retained on the ferry sold by Gates and Mrs. Downey to Ballantine. While this release does not actually acknowledge receipt by Downey of the money and for that reason might not be sufficient in itself to establish the payment of the money to Downey, nevertheless, it is an admission by Downey as committee that the money was paid either to him or Mrs. Downey, for he would not be justified as committee in making a release of the lien unless Gates had paid it over. We are therefore constrained to hold that Gates had no such personal interest as disqualified him from testifying to the payment of the $4,250 by him to Downey. This being true, the trial court properly charged appellant with this sum.

A consideration of the credit of $7,143.50 claimed by appellant on account of board paid by Downey to Hord Sanitorium reveals that only $700 of this was paid in cash and that all the balance was paid by services rendered by Downey to the Hord Sanitorium, these services being largely for building work performed by Downey. In the face of this it is contended that the wife's estate was chargeable with this sum, the argument being that Downey was insolvent and used the assets of his wife's estate to pay for her board at the Sanitorium and that to hold the surety was not entitled to this credit in determining liability on its part would be to say that where a solvent husband qualifies as committee for his insane wife his surety thereby acquires the duty to support the wife. This argument would be more plausible if it were conceded that the evidence established insolvency on Downey's part and that he used

his wife's money to pay her board while he was insolvent, but such is not the case for, as pointed out above, the evidence wholly fails to establish either solvency or insolvency on Downey's part. By Section 2130, Kentucky Statutes, a husband is liable for his wife's necessities and this includes, of course, board in a sanitorium in which he has placed her. It may be conceded, as contended by appellant, that a wife is also liable out of her own estate to any person furnishing necessities to her but this does not relieve the husband of liability or impose on her estate the obligation to repay him. The primary liability is on the husband. Palmer et al. v. Turner et al., 241 Ky. 322, 43. S. W. (2d) 1017. In the absence of a clear and definite showing that Downey was insolvent and used his wife's money to pay for her maintenance at the sanitorium, we conclude that the trial court correctly refused to allow this sum as a credit to the surety.

As indicated up to this point, the committee is properly chargeable with the two controverted items of $1,125 and $4,250 and also with the item of $5,450 admittedly received by him as committee. As he was chargeable with these sums, and as they should have been available for investment, he was undoubtedly also chargeable with four per cent interest thereon pursuant to Kentucky Statutes, Sections 2153 and 2035a-1. This interest, when figured from the proper dates, is easily in excess of $3,000 so that the items mentioned and interest thereon aggregate more than $13,825. When the credit of $7,143.50 for the wife's board at the sanitorium is eliminated and all the remaining credits claimed by appellant (aggregating $1,553.53) are allowed, there is still a balance left owing by Downey as committee of more than $12,000, and the trial court therefore correctly rendered judgment for the full amount of the bond.

The judgment was for $10,000 with interest from the date of the rendition of the judgment and a cross appeal is prosecuted by appellees in which they contend that interest should. have been awarded at the rate of six per cent from January 1, 1928, or at least from the date the suit was filed. In this contention we see little merit, since the obligation of the surety's bond was limited to $10,000 and the claim against it was an unliquidated claim and an allowance of interest on an un-

liquidated claim is in the discretion of the court or jury trying the case. Congoleum-Nairn, Inc., v. M. Livingston & Co., 257 Ky. 573, 78 S. W. (2d) 781. In addition, Kentucky Statutes, Section 186d-1, provides that surety bonds shall be limited in a definite penal sum and that a recovery against a surety on such a bond shall be limited to the amount of the penalty named therein. It is our conclusion that the trial court committed no error in adjudging interest only from the date of the entry of the judgment.

The judgment is affirmed on the original and the cross appeal. Judge Tilford did not participate in the decision of this opinion.