## Smith's Adm'x et al. v. Smith's Adm'r et al.

November 25, 1947.

R. Monroe Fields, Judge.

Jean L. Auxier for appellants.

Henry J. Scott and Andrew E. Auxier for appellees.

Opinion of the Court by Chief Justice Sims—
Reversing.

This is the second appeal of this case, the first
being reported in 295 Ky. 50, 173 S. W. 2d 813. The
facts appear there and we will only restate so much
of them as affect the instant appeal.

The former opinion directs that an amended peti-
tion tendered by Mrs. Smith should have been filed,
wherein she pleaded that her deceased husband's estate
was indebted to her in the sum of $21,000 she expended
in supporting him and his family since June 30, 1938.
We further directed that Mrs. Smith be allowed to pre-
sent her proof and exhibits in intelligible form, and to
retake it if necessary.

Upon a return of the case, the chancellor ordered
the amendment filed and referred the case to the Hon.
Sidney Trivett, special commissioner, to hear any per-
tinent evidence offered by either party, as well as to
consider any evidence theretofore introduced on Mrs.
Smith's claim "for money expended for the support
of the said John Smith and family from June 30, 1938,
to Aug. 12, 1940, (the date of Mr. Smith's death)."
The only new proof offered was that appellants intro-
duced J. E. Robinson, an accountant, who examined
the bills, checks and receipts (covering the period from
June 30, 1938, to Aug. 12, 1940), which had been re-
ferred to on the first trial but were not to be found
in that record when it was brought here.

Robinson testified that the checks given by Mrs.
Smith totaled $18,868.30 after omitting certain checks
she gave in payment of attorneys' fees and bank loans;
that the total of the checks drawn by her payable "to
cash" was $3,331.08, which he deducted from the grand
total of checks of $18,868.30, leaving $15,537.22 she had
expended by check. He further testified that the total
bills rendered Mrs. Smith, excluding duplications was
$4,031.16, and the total of all her receipts was $4,598.57,
making a total expended by her of $24,408.15 (which
we calculate at $24,166.95). Filed with Robinson's de-
position are twenty pages of figures showing these bills
and receipts, but the checks do not appear to be listed.
On cross-examination the witness said his statements
do not show the amounts expended by Mrs. Smith for

food, clothing, medical bills, automobiles, gasoline, lumber and hotel bills. It is apparent that this information is necessary for a fair and complete determination of this controversy.

Without showing how he arrived at his figures, except the item of taxes of $239.53 and one of $2,005 representing a certificate of deposit Mrs. Smith purchased from her husband, the commissioner allowed her to recover for sums expended for groceries $602.19; drugs and teeth $97.72; clothing $511.24; improvements for husband's home, etc., $898.47; "school tuition" $1,815.-48, or a total of $6,169.63.

Both sides filed exceptions to the report. The chancellor overruled appellants' exception but sustained appellees' exceptions to the items of taxes, tuition and certificate of deposit, which totaled $4,060.01, and gave judgment for appellants in the sum of $2,-109.62, from which they appeal.

The commissioner's report is rather critical of Mrs. Smith for having "spent lavishly" $21,000 on her husband and family within a space of two years. It states that while our former opinion referred to Mr. Smith as a miserly man, he could not ascribe that attribute to Mrs. Smith, but on the contrary she was exceedingly extravagant. The words "exceedingly lavish" and "extravagant" are relative terms, largely depending upon one's wealth, income and station in life. What would be lavish spending or extravagance by the wife of a poor man would not be so regarded by a court when indulged in by the wife of a man worth $200,000. We are not in accord with appellees that Mr. Smith's estate is only liable for the necessities of life supplied him and his family by his wife; especially in view of the fact that he accepted the scale of living furnished by Mrs. Smith and encouraged her in providing it in the manner she did.

Mrs. Smith married her husband when she was slightly under 21 years of age in 1910. At that time he was worth $23,000. She helped him increase his wealth and on June 30, 1938, when he drove the unconscionable bargain with her to accept $25,000 in lieu of her distributable interest in his estate, he was worth $200,000. After paying her this $25,000, Mr. Smith re-

fused to support the family and shifted that burden onto her shoulders so that he might reap the benefit of the small percentage of his estate paid her in lieu of her inchoate right of dower.

In the circumstances, we think that in permitting Mrs. Smith's estate to recover what she expended in the support of her husband and family she should not be limited to bare necessities, but she was entitled to some of the good things of life. We do not mean by good things a sharp axe, shiny scrub pail, a washing machine, a new cooking range, a refrigerator or a vacuum cleaner. We mean the things that the average wife of a man worth $200,000 usually desires and has, such as a nice home, good food, becoming clothes, wholesome recreation and amusement, the use of an automobile with trips where she stops at first class hotels. She had the right to "lavish" upon her children the privilege of being educated in recognized institutions of learning.

The chancellor erred in sustaining exceptions to the item of $239.53, representing taxes Mrs. Smith paid on the property of her husband, and that of $1,815.48 for tuition; but he correctly sustained exceptions to the item of $2,005, as Mrs. Smith bought a certificate of deposit from her husband with that sum. Something is said in the commissioner's report about the sums expended by Mrs. Smith in setting up her daughter, Goldina, in the restaurant business. It is patent that such an expenditure by Mrs. Smith should not be charged against her husband's estate. Nor may the cost of automobiles which Mrs. Smith purchased be charged against her husband's estate; but as we think a car this day and time is a practical necessity for the large family of a man worth $200,000, the cost of operating the cars Mrs. Smith bought, together with the reasonable depreciation thereon, should be charged against the estate.

We have looked over the bills and receipts listed in this record and most of them seem to represent reasonable expenditures which ordinarily are chargeable against the estate of a man worth $200,000 for the support of himself, wife and children. We have neither the time nor the inclination to classify and audit these

receipts and bills to determine just what among them are proper charges against Mr. Smith's estate in accord with what we have said above. We reverse the judgment with directions that the chancellor cause the checks, bills and receipts of Mrs. Smith to be audited and to allow her to recover in conformity with this opinion all sums she expended in the support of Mr. Smith, his children and herself, not exceeding $21,000. Whether the amount of the recovery shall bear interest is in the discretion of the chancellor, since it is an unliquidated sum. Congoleum-Nairn, Inc. v. M. Livingston & Co., 257 Ky. 573, 78 S. W. 2d 781; Fidelity & Casualty Co. of New York v. Downey, 284 Ky. 72, 143 S. W. 2d 869.

There is no merit in appellants' contention that as the averments of the amended petition were not controverted, they stand admitted. In the first place, the answer of defendants appearing in the record on the former appeal specifically deny that Mrs. Smith expended $21,000, or any sum, in supporting her husband and family. In the second place, where a case has been tried as though the pleadings raised certain issues, this court will so consider it. Hazard Lumber & Supply Co. v. Demumbrum, 220 Ky. 442, 295 S. W. 414; Colovas v. Allen Motor Co., 242 Ky. 93, 45 S. W. 2d 809.

The judgment is reversed with directions that one be entered in conformity with this opinion.