## Boggess v. Bivins.

February 7, 1950.

As Modified on Denial of Rehearing June 6, 1950.

A. J. Bratcher, Judge.

452

T. O. Jones for appellant.

Meredith, Iler & Logan for appellee.

JUDGE KNIGHT—Affirming judgment on appeal and on cross-appeal.

This suit in equity was brought by appellee to enforce a mechanic's lien, which he had filed against appellant's property, fully described in the petition. In addition to appellant, the First National Bank of Greenville and the Wice Lumber Co. were made defendants because of liens which they had or claimed against the property. The petition alleges in substance that under a contract with appellant, appellee furnished certain labor and materials for the erection, alteration and repair of a house belonging to appellant on the property described for which he agreed to pay appellee the sum of $7865, and of which amount appellant had paid the sum of $1500, leaving a balance of $6365 for which amount appellee prays judgment, with interest from November 23, 1946, the date the work was completed, until paid, and asks for a sale of the property to satisfy said lien.

The First National Bank filed its answer and cross-petition setting up a mortgage which had been executed to it on May 11, 1946, by appellant and under which it

asked to be adjudged the first lien on the property. No answer was filed by the Wice Lumber Co.

Appellant filed his answer and counter-claim which was in substance that appellee agreed to erect the contemplated improvements, furnishing all the labor and materials and performing the required work in a good workmanlike manner at a cost not exceeding $5000; that the materials furnished by appellee and used in the construction of the building were of inferior quality; that the foundations under the walls were insufficient to hold their weight as a result of which the walls cracked, the roof leaked, the ceiling sagged, the plaster fell off in places and other defects developed which will necessitate considerable repair or rebuilding of said improvements to render same fit for use; that he relied on appellee's representation that he was an experienced builder and that he would furnish good material and do the work in a workmanlike manner, which he failed to do; that by reason of appellee's failure to live up to his agreement he has been damaged in the sum of $2500; that he has paid to appellee the sum of $2705.95 for work done which is worthless to appellant and he prays that appellee's petition be dismissed and that appellant recover $5205.95 on his counterclaim. A reply denying the affirmative allegations in the answer and counterclaim made up the issues.

After taking extensive proof on the issues involved, the Chancellor, after giving his reasons therefor in a written opinion filed in the record, entered a judgment adjudging the First National Bank of Greenville first lien on the property by virtue of its mortgage. It further adjudged that appellee recover of appellant the sum of $4880.05 with interest from November 23, 1946, until paid, and costs for which he may have execution. It further adjudged appellee a lien on the real estate by virtue of its mechanic's lien but inferior to the bank's lien, but does not direct the sale of the real estate to satisfy said liens. Appellant appeals from all of said judgment and appellee cross-appeals from so much of said judgment as denies him recovery of the full sum of $6161.05 to which he claims his proof shows him entitled and from so much of said judgment as holds the bank's lien superior to his lien.

On the lot owned by appellant at the corner of Main

and Trowbridge Streets in Greenville was located a large residence approximately 30x60 feet, in part of which he conducted an appliance and radio store. He needed more room for the display of his merchandise and decided to build an annex to his residence which would in effect change his residence into a commercial building. He took the matter up with appellee and they entered into some sort of agreement for the contemplated construction. From that point on there is highly conflicting testimony as to what happened.

### Appellee's Evidence

According to appellee's testimony, he and appellant entered into a written contract about March 10, 1946, for the erection of an annex approximately 22x36 feet extending north from the old residence almost to Trowbridge Street, and another separate annex approximately 14x36 feet extending west from the old residence almost to Main Street. It also included a retaining wall on the east side. These annexes and the retaining wall were to be built with concrete blocks and other materials as good as could be obtained without priority at the total agreed price of $5600. This was the only written contract and after that, as the work proceeded, many changes were made at the suggestion of appellant by verbal agreement of the parties, but they were not made part of the written contract. As these changes were made appellant was told what they would cost. The first change required by appellant was an extension of the annex along Trowbridge Street from the 36 feet, as originally contracted for, to approximately 50 feet taking it out nearly to Main Street and then parallel with Main Street up to the other annex which faced on Main Street, thus enclosing a square of approximately 14x14 feet which was originally not a part of either annex, the effect of which was to make one complete L shaped annex around the north and west sides of the old residence. This change was made after the west foundation and wall of the northern annex had been started south toward the old residence at the end of the 36 feet as originally contemplated, necessitating tearing out that part of the wall leading south to the old residence and tying in the new wall at the end of the 36 feet. This change added a cost of $950 to the original contract. There was also a change made in the west wall of the annex so that instead of a business front as contem-

plated in the original contract, it was changed to make a porch for the upstairs apartment of the old residence as is shown in the photograph filed as an exhibit. This change was ordered by appellant and he was told it would cost an additional $500. Another change was made in the basement to make room for a coal bin at a cost of $100. Other smaller changes were made from time to time and in each instance appellant was informed what they would cost. In the end they totaled $7865 which appellant agreed to pay and made no complaint about the work done or that there was any dissatisfaction until this suit was filed. Appellee admitted having received an additional payment of $100 cash and merchandise valued at $104.95 from appellant, which should be credited against the amount sued for, leaving a balance due of $6161.05. He admitted that slight defects developed in the building, but minimized their importance, said they can be corrected for a few hundred dollars and laid the blame largely on the inability to get seasoned lumber and other material at that time, shortly after the war, with priority controlling, and on the methods which appellant required in attaching the annexes to the old building so as to make the upper floors of the latter still usable. Other evidence introduced on behalf of appellee, including that of building contractors and real estate men, was to the effect that the annex was reasonably well constructed under the conditions prevailing at the time; that the amount charged by appellee for the erection of the building was reasonable.

## Appellant's Evidence

According to appellant's testimony, when he discussed the proposed annex with appellee he made a sketch of the building as he wanted it, using all the space between the old residence and Trowbridge Street and running along the latter street 72 feet to Main Street, then along Main Street 68 feet, then along the south side of the lot 32 feet, then at right angles 10 feet to the old building. There was also to be a retaining wall on the east side of the old building. All was to be built of concrete blocks and good seasoned lumber and all to be done in a workmanlike manner. Appellee agreed to erect the building as outlined at a price not to exceed $5000, furnishing all labor and materials. There was no written contract signed by him and no agreement to pay $5600 as claimed by appellee. He admitted the change

that was made on the west side which provided for a porch for the upper apartment, but that appellee said it would cost about $300 to $400. He admitted the change in the basement necessitated by the coal bin, but nothing was said by appellee about any extra cost. He testified of another change in the original plan whereby the proposed 68 foot wall along Main Street was cut down to approximately 35 feet, then turned east about 13 feet to the old residence thus eliminating a large section of the building as he had planned, which resulted in a saving to appellee. He was not definite in his testimony as to the change along Trowbridge to Main at the northwest corner admitting that he eliminated that section after it was included in the original plan and then restored it. He complained to appellee about the concrete footing which he thought was not strong enough to bear the weight of the walls and was assured that they were "strong enough for a train to run over." He complained of the softness of some of the concrete blocks being used, but was assured by appellee that they were all right. He detailed many defects which developed in the completed building such as leaky, buckling roof, warped and sagging ceiling, cracks in the concrete block walls, cracked concrete window sills, leaks around the windows, sagging rafters under the roof, plaster crumbling and falling off in places and window frames pulling away from the walls and in general he painted a picture of a "jerry" built structure which is almost a complete loss to him. He admitted that he is using most of the building for his business and rents out a portion of it for $50 per month. In a large part of his testimony he was corroborated by contractors and builders who testified that the building could have been constructed as planned by him and with good materials and workmanship for about $5000 and that it would cost approximately $3000 to put the present building in good condition.

There was a great deal of testimony introduced on both sides to sustain their respective contentions, and to summarize it all would unduly lengthen this opinion. The above summary of the testimony of the principals is sufficient to show its conflicting nature and, after reading the testimony, we are not prepared to say that the Chancellor did not reach a proper decision. Certainly we entertain no more than a doubt about

the matter and under these circumstances we do not feel justified in reversing his decision on the almost purely factual issues involved. We find ourselves in agreement with the Chancellor when he said in his opinion:

"It is clear to this Court that defendant did not get a first class building. It is a little more difficult to place the blame for that result. It was constructed without design or fixed plan, in a rather haphazard manner. It was changed a number of times after the beginning. These changes were made at Mr. Boggess' suggestion in most instances. It was probably impossible at that time to obtain first class material. The evidence further shows the lack of planning by the fact that his building was begun without a priority for the purchase of material and without knowledge that same was required. Consequently, material had to be obtained wherever it could be found and of the quality available. These conditions were known to both the plaintiff and the defendant; neither are wholly to blame for the unsatisfactory result, but both are probably equally to blame. The building is not a complete loss as claimed by the defendant. He is using it himself and renting portions of it to others. There is a wide range of opinions as to the value of the building much of which is incompetent."

The lower court deducted from the amount claimed by appellee the sum of $300 to repair the roof, $100 to fix the windows, $100 to repair the ceiling, and $25 for damage to furniture resulting from the leaks. While these amounts are small as compared to claims of appellant, we cannot say they are not sustained by the evidence as a whole.

Another contention of appellant is that the lower court erred in refusing to allow him as a credit on the debt the sum of $1000 which was borrowed at the bank and turned over to appellee in January 1947. In order to obtain this money appellee had to sign the note as surety and has continued to sign renewals of the note which has not been paid. Appellant was properly denied credit for this money as long as appellee is liable for its payment as surety. As soon as appellee is relieved of his liability on this note, the sum paid, principal and interest, should be credited on appellant's debt.

The principal complaint made by appellee on his cross-appeal was that there was no justification for the Chancellor's reducing his base claim of $7865 under his contract to $7110 which represented the total cost of the labor and materials used on the job as shown by the itemized list of these items which the court required appellee to file. It is true that appellee sued on the contract and not on the quantum meruit and ordinarily only proof as to the contract would be revelant. However, the proof as to the original $5600 written contract was highly conflicting and appellee was never able to produce it, claiming it had been lost. The rest of the $7865 contract sued on for extras and changes was not claimed to be in writing and the proof as to these changes and the prices to be charged therefor was so conflicting as to justify the Chancellor in requiring appellee to file his schedule of outlay for materials and labor to assist him in arriving at a fair base for determining the issues between the parties. Under these circumstances the $7110 base fixed by the Chancellor meets with our approval.

The Chancellor correctly adjudged the First National Bank of Greenville priority of its mortgage lien, filed May 11, 1946, over the mechanic's lien of appellee filed November 26, 1946.

We think the lower court correctly adjudged that interest on the debt should run from November 26, 1946, when the work was completed and payment was due, rather than from the date of the judgment, since this was within the discretion of the court. Fidelity & Casualty Co. of New York v. Downing, 284 Ky. 72, 143 S.W. 2d 869.

On the whole case we are of the opinion that it should be and it is affirmed both on appeal and on cross-appeal.