Mrs. Amanda GILREATH, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 1273.

United States District Court
E. D. Kentucky,
Lexington.

Dec. 19, 1958.

Froome Barbour, Barbour, Kimpel & Allen, Cincinnati, Ohio, for plaintiff.

Henry J. Cook, U. S. Atty., Lexington, Ky., C. T. Tucker, Chief Atty. Veterans Adm'n, L. D. Burrus, Atty. Veterans Adm'n, Louisville Ky., for defendant.

HIRAM CHURCH FORD, District Judge.

On May 8, 1951, Andrew Lawrence Gilreath, a young man about 23 years of age, entered the active military service of the United States and continued in active service until April 21, 1953, when he was released from active duty and transferred to the enlisted reserve corps. He was never married and made his home with his mother, the plaintiff Mrs. Amanda Gilreath, a widow who resided at Holly Hill, McCreary County, Ky.

In an automobile accident on August 3, 1953, the veteran Andrew Lawrence Gilreath sustained injuries which resulted in his death on August 28, 1953. He never regained consciousness after the accident.

While he was in active military service, on May 14, 1951, the veteran executed and mailed to the Veterans Administration an application for National Life Insurance upon an application form which had customarily been used by soldiers in their applications for National Life Insurance under the Act of 1940, as amended, 38 U.S.C.A. § 801 et seq. The veteran obviously did not know and was not advised that the granting of such applica-tions had been discontinued by the Government less than one month previous to his application. The application, how-ever, was duly received by the Veterans Administration and No. V–16460277 was endorsed upon it.

By letter of June 11, 1951, addressed to the veteran, he was informed, in sub-stance, that his application had been disapproved because it was not submitted on or before April 25, 1951, as required by 38 U.S.C.A. § 820; and he was further informed that under the terms of the Servicemen's Indemnity Act of 1951 he would be protected in the amount of $10,000 insurance while in the service and for 120 days after his separation from active service. This provision is contained in Section 2 of the Act, 65 Stat. 33, 38 U.S.C.A. § 851.

Another provision of the Servicemen's Indemnity Act of 1951 amended Section 621 of the National Service Life Insur-ance Act of 1940 and provided: "Any person entitled to indemnity protection under section 2 of the Servicemen's In-demnity Act of 1951 who is ordered into active service for a period exceeding thir-ty days, shall, upon application in writ-ing made within one hundred and twenty days after separation from such active service and payment of premiums as hereinafter provided, and without medi-cal examination, be granted insurance by the United States against the death of such person occurring while such insur-ance is in force. * * * " 65 Stat. p. 37, 38 U.S.C.A. § 822.

Congress seems to have thus made it quite clear that the only action required of service men, referred to in the above mentioned amendment, in order to take advantage of the opportunity afforded to continue their Government insurance under a premium paying plan, was the mere making of an application in writ-ing within one hundred and twenty days after separation from active service and payment of premiums as thereinafter provided.

Regulations of the Veterans Adminis-tration in respect to such applications provide as follows:

"(3) Application for insurance under this paragraph should be made on the form prescribed therefor, but any written statement which in substance meets the requirements of this paragraph may be considered an application. * * *." 38 Code of Federal Regulations, § 8.0(f) (3), pg. 291.

### "Grace Period.

"§ 8.14 *Establishment of grace period.* For the payment of any premium under a National Service Life insurance policy, a grace period of 31 days without interest will be allowed, during which time the policy will remain in force; but if the policy shall mature within the grace period, the unpaid premium or premiums shall be deducted from the amount of insurance payable." 38 Code of Federal Regulations, § 8.14, pg. 296.

That no question is made in this case in reference to premiums, is due perhaps to the grace period above provided.

On July 27, 1953, which was well within the 120 days after the veteran's release from active military duty, a letter was sent to and received by the Veterans Administration on July 29, 1953, which upon its face appeared to have been written and signed by the veteran. In this letter the number of the previous application, No. V–16460277 was referred to with the following statement:

"I would like to keep my Insurance paid up with you my policy number is V–16460277. Will you please send me a statement of how much it is each month.

"If I understand it right it is paid up for Ninety days after I was released from the service please let me know when the first payment came due. I still want to carry the Ten Thousand dollar policy.

"Sincerely yours

"Andrew L. Gilreath

"Holly Hill, Ky."

In fact this letter was not written or signed in person by Andrew L. Gilreath but by his mother, the plaintiff Mrs. Amanda Gilreath.

On August 7, 1953, apparently before a reply was received from the Veterans Administration to the letter of July 27, 1953, the plaintiff, while her injured son remained unconscious in the hospital, wrote a follow-up letter inquiring why no response had been received and she enclosed a check for $10, obviously for the premium on the requested policy. She signed her son's name to the letter and the check.

The plaintiff's claim for the insurance benefits here in question finally reached the Board of Veterans Appeals which disallowed the claim "holding in effect that the evidence was inadequate to establish that when the plaintiff wrote the letters of July 27 and August 7, 1953, she did so at the veteran's request" (see paragraph 17 of the Stipulation herein), and this litigation arising out of the disagreement as to plaintiff's claim ensued after the plaintiff was informed of the unfavorable action of the Board of Veterans Appeals.

This Court has jurisdiction of the parties and the subject matter here involved. 38 U.S.C.A. §§ 445, 817.

The testimony heard at the trial of this case on June 3, 1958, was directed to the question decided adversely to the claim of the plaintiff, to-wit: Whether there was adequate evidence to establish that when the plaintiff wrote the letters of July 27 and August 7, 1953, she was acting at the request of the veteran and with his authority and consent.

██ Under Kentucky Revised Statutes, § 421.210(2), the testimony of the plaintiff on behalf of herself "concerning any verbal statement of, or any transaction with, or any act done or omitted to be done by" her deceased son is incompetent and is not considered by the Court in the determination of this case. The plaintiff's contention that defendant waived the right to object to the plain-

tiff's testimony seems untenable, Duling v. Markun, 7 Cir., 231 F.2d 833, certiorari denied 352 U.S. 870, 77 S.Ct. 96, 1 L.Ed. 2d 76. The testimony of plaintiff's daughter Martha Fletcher, the daughter's husband B. H. Fletcher and her brother Woodrow Gilreath is competent. None of these witnesses has a present, certain or vested interest so that they would gain or lose directly or immediately thereby. Uncertain, remote or contingent interest does not disqualify them. Hicks v. Oak's Adm'r, 233 Ky. 27, 32, 33, 24 S.W.2d 917; Fidelity & Casualty Co. of New York v. Downey, 284 Ky. 72, 77, 143 S.W.2d 869; Hogg's Adm'r v. Commonwealth, 301 Ky. 557, 192 S.W.2d 487, 163 A.L.R. 969; De Long v. Owsley's Ex'x, 308 Ky. 128, 213 S.W.2d 806.

Martha Fletcher, a daughter of the plaintiff, testified that shortly after her brother Andrew Gilreath was discharged from the service he came to board with her at Cincinnati and worked for the Ford Motor Company. She stated that on the week-end prior to July 27, 1953, Andrew, and another brother Woodrow Gilreath, who was also boarding with her and working for Ford, went home to Holly Hill, Kentucky, and brought back their mother and Woodrow's wife and two children for a week's visit. While they were there, according to the witness, Andrew asked "Mom" to write a letter to the Veterans Administration to continue his Government insurance. After writing the letter, Mrs. Fletcher said her mother brought it in and read it, and asked Andrew if he wanted to read it, but he said no, to go ahead, that he was running late getting to work and was rushed for time, so the mother read the letter out loud to him and he said it was all right, and when she asked him to sign it he told her to go ahead and sign it herself. The witness said her mother sealed the letter and gave it to Andrew. The testimony of Mrs. Fletcher is corroborated by her husband, B. H. Fletcher and by the other brother, Woodrow Fletcher.

Mrs. Fletcher also testified:

"Q. 8. Did you hear any mention of who your brother wanted to be the beneficiary on that policy? A. He told me himself that he wanted Mom to have it.

"Q. 9. When did he tell you that? A. A couple of weeks, I wouldn't say exactly what date, I don't know, but he talked to me about it. He said that Mom raised him and he figured that she was the one that should have the insurance."

I can find no justifiable reason for discrediting the testimony of these witnesses. I am of the opinion that their testimony is sufficient to establish that, by the letter of July 27, 1953, the plaintiff expressed the intention and purpose of the veteran to take advantage of the insurance benefits made available to him for the benefit of his mother, as shown by his application No. V–16460277, and that as his authorized agent she was acting on behalf of, at the request of and with the approval of her son, the veteran Andrew Lawrence Gilreath, and that such action by the authorized agent of the veteran met the requirement of the applicable statutes and regulations. "The clearly expressed intention and purpose of the soldier * * * should not be thwarted by the fact that all the formalities for making his purpose effective may not have been complied with", Criscuolo v. United States, 7 Cir., 239 F. 2d 280, 282; Le Blanc v. Curtis, 5 Cir., 6 F.2d 4.

My conclusion is that, by virtue of the application filed on his behalf on July 29, 1953, by his authorized agent, considered in the light of his previous application No. V–16460277, National Life Insurance, as provided by "Servicemen's Indemnity Act of 1951", was in effect upon the life of the deceased soldier Andrew Lawrence Gilreath at the time of his death on August 28, 1953, with the plaintiff as beneficiary thereof.

Let judgment be entered in conformity herewith.