## Congoleum-Nairn, Inc., v. M. Livingston & Co.

(Decided Feb. 1, 1935.)

EATON & BOYD for appellant.

WHEELER, WHEELER & SHELBOURNE for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Reversing.

This is the second appeal of this case. On the first appeal the relative positions of the parties were the

reverse of their positions on this appeal. The opinion of the former appeal may be found in 244 Ky. 533, 51 S. W. (2d) 678, 679.

In the first case it was made to appear that appellee was engaged in the wholesale general supply business at Paducah, Ky., and was selling floor coverings manufactured by appellant in Illinois. Appellant sued appellee for $1,845.02, balance on account. Appellee answered admitting the debt but pleading damages to the amount of $2,130 for a breach of contract, it being averred that appellee had been given an exclusive territory for the sale of appellant's products, and appellant had violated the contract by sales to parties within the limited territory and by refusing to recognize appellee's orders for goods. A reply controverting the allegations of the answer raised an issue, proof was heard, and the law and facts were submitted to the court.

The lower court found the facts to be that there had been an oral contract between the parties whereunder the appellant would not sell its products to other jobbers or wholesalers within a certain boundary. The court further found that the contract had been violated by appellant.

However, the court decided that the oral contract was within the statute of frauds (Ky. Stat. sec. 470, subd. 7), because it was not to be performed within one year. The court also decided that appellant was entitled to recover the full amount of its account, and dismissed the counterclaim of appellee.

On appeal this court held that since the oral contract was terminable at the will of either party, it was not a contract not to be performed within a year, hence not within the statutes of frauds. The judgment of the lower court was reversed and this court held:

"The defendant may therefore recover on its counterclaim such damages as it sustained up to the time one of the parties exercised its right to terminate it."

It was also said that while the proof showed some damages were sustained by appellee, it was of such indefinite nature that this court could not determine the extent. By reference to the record on the first appeal, it appears that appellee in its counterclaim pleaded that

in violation of the contract, whereby it was to have the exclusive sale within the agreed territory, appellant sold goods in the exclusive territory at the contract price of $14,200, which if sold by the appellee would have netted it a profit of $2,130, and as further ground of recovery claimed that after the sale of the goods in the limited territory, and after appellee had complained of such sales, the appellant refused to recognize appellee as its representative and refused to fill secured orders for its customers, whereby it was further damaged in the sum of $300, making its total damage $2,430.

By an amended answer filed before the first trial, the appellee raised the amount of damage, caused it by the alleged failure of appellant to furnish it goods, from $300 to $2,150.84, which increased the total amount claimed by way of damage to $4,280.84.

When the case went back to the circuit court, the appellee filed a second amended answer, fixing the amount of its alleged damage at $4,214.11, made up as follows: For failure and refusal of appellant to fill orders which appellee took for appellant's goods, $2,074.02, being the net profit appellee would have made on orders for $15,550 worth of goods orders for which appellee took in good faith and which appellant refused to ship. The balance of the $4,214.11 consisted of amounts claimed as net profits on goods sold and delivered by appellants to firms in the prohibited territory, appellee claiming that a profit on goods sold by others within the contracted territory should have been allowed to appellee under its contract. The answer specifies the names and addresses of those within the territory to whom goods were shipped and the amounts so sold and shipped, and alleges that the shipments were made between the —— day of April, 1929, and the 12th day of September, 1929. The prayer of the answer also asked for interest from September 12, 1929. A reply to the second amended answer controverted that pleading.

Some proof was taken and the case submitted to the court without intervention of a jury, with the result that the court found for appellant its balance on account, $1,845.02, and for appellee on its counterclaim $3,213.56, which overbalances appellant's claim by $1,368.54, and upon which latter amount the court allowed interest from the date of judgment.

To that part of the judgment which allowed appellee its counterclaim and to so much as fails to allow appellant interest on its balance due on account, the appellant objected, excepted, and was granted an appeal. To that part of the judgment which failed to allow appellee the amount of commission or profit lost by it on orders taken on and after August 1, 1931, and to so much as fails to allow interest on the amount adjudged to it on its counterclaim from September 12, 1929, the appellee excepted, prayed and was granted an appeal, though no appeal was perfected and there is no cross-appeal.

On a motion of appellant for a finding of facts and conclusions of law, the court found the facts to be: That there was an oral contract between the parties whereby plaintiff agreed not to sell to jobbers or wholesalers other than Livingston & Co., within a fixed territory, thereby making Livingston & Co. the sole representative, with exclusive right to purchase for resale the goods of Congoleum-Nairn, and that the contract was breached by sales to jobbers in Cairo, Ill., and Union City, Tenn., all within the territory embraced in the contract boundaries. The court also found as a fact that the *final breach* of the contract occurred upon Congoleum-Nairn's failure to fill orders procured by Livingston & Co., and that the *final breach* happened on August 1, 1929.

The court further found that prior to August 1, 1929, Livingston & Co. had taken orders for goods to be delivered, and which the Congoleum-Nairn refused to ship, to such an amount that if the goods had been shipped to Livingston & Co. its net profit would have been $1,073.47; that Congoleum-Nairn had shipped to firms in Union City, Tenn., and Cairo, Ill., a quantity of merchandise which, if it had been supplied through Livingston & Co., would have netted a profit of $2,140.09.

The Congoleum-Nairn company filed its motion and grounds for a new trial, the grounds in support of the motion being seven in number. The court overruled the motion, and appellant asks a review of the matters involved. Counsel for appellant in brief confines his argument mainly to two points: (1) That the court erred in the assessment of damages against appellant, "and that same is too large"; (2) that the award is not based on sufficient evidence. It is also complained that

the court erred in its failure to award interest on the account sued on. It may be said in the outset that if there be evidence in support of the court's finding, the judgment should be affirmed because of the well-settled rule that the judgment of the trial court on submission of questions of law and fact is to be treated on appeal as constituting the verdict of a properly instructed jury. Collins v. Lemaster's Adm'r, 232 Ky. 188, 22 S. W. (2d) 567; Fletcher American Co. v. Culbertson, 228 Ky. 734, 16 S. W. (2d) 175.

There is no issue in the present case on the question as to whether or not the appellee had the exclusive sale of the products of appellant in the Paducah territory, since that question had been eliminated by the opinion on the first appeal. The only issue is and was on the counterclaim of appellees, growing out of the alleged breach of contract in the particulars which we have set out. On this issue the proof heard on the first trial, with additional proof, was considered by the lower court, and the issue of facts seems to have been narrowed to questions as to the amount of damages and when the breach of contract occurred.

In the finding of facts the court fixes the 1st day of August, 1929, as the date on which the appellant *finally* breached the contract; the court saying:

"Said contract was breached by the plaintiff selling to jobbers in Cairo * * * and Union City * * *, and that the *final breach* of the contract by plaintiff's failure to fill orders procured by defendant for Congoleum-Nairn goods, occurred on the 1st day of August 1929."

At this point it may be confessed by the court that the evidence introduced on the question of time of termination or breach of the contract is not any too clear. Very little direct and convincing proof was presented, but the court's finding of August 1, 1929, as the date of the final breach seems more clearly established than any other particular time or date. It seems evident from the court's finding that he did not treat the first breach "by selling to jobbers in" prohibited territory, as a *termination* of the contract, nor did appellee so treat it, since it is apparent that appellee was trying to get its orders filled after the first sales to dealers in appellee's claimed exclusive territory.

Appellant earnestly contends that the termination occurred long before August 1, 1929, evidently treating, for the purpose of its position, the sales to competitors as fixing the date, and on this basis fixes the date the 8th of April, 1929, and under no circumstances later than June 15, 1929; the 8th of April being the date of the last shipment to appellee, and about June 15, 1929, being the time a shipment was made to a competitor after the last shipment to appellee.

Appellee in brief insists that the date of termination of the contract was September 11 or 12, 1929, though not with sufficient force to justify appellee to pursue its appeal in this court. It is evident that appellee's basis for this claim is a letter filed as an exhibit in which appellant wrote to appellee on September 12, 1929, as follows:

"In reply to yours of the 4th relative to credit memorandum issued through Small and Schelosvy Company * * * which you suggest being issued through your concern. Wish to say this is not possible inasmuch as we are not now selling you our line."

Mr. Phipps, who says he was a director of and works for the Livingston Company, after being asked whether they had any notice or information that appellant would not ship goods to appellee, said that the first *concrete* evidence was the letter above set out, or a similar one of September 11, 1929. The same witness, when asked if the company had to his knowledge any notice or information, prior to the letters, that the orders which they had taken would not be filled and that the goods would not be shipped, answered: "No, sir, they did not." This evidence does not satisfactorily fix the time of the breach or termination. The letter only shows that the appellant was "not now" selling appellee "its line" and that Phipps knew of no notice or information that appellant would no longer fill appellee's orders.

On the first trial Phipps testified that after appellee learned of shipments to its competitors at Cairo and Union City, they tried to get appellant to discontinue this practice; tried to make them settle for profits on the goods shipped to competitors, and finally refused to pay this account. The shipments to Union City were

April 28 and August 8, 1929; the shipments to Cairo, from February 11, 1929, to September 12, 1929. Phipps also testified in that trial that "the first time they refused to ship orders was along in July or August, and they continued to refuse along into September." The orders which appellee took, and which could not be filled because of lack of shipment, ran from June 19, 1929, until September or October; some were in June and quite a number in July of 1929. Phipps testifies that a representative of the company was in Paducah in July or August and took an order for a large number of rugs, but failed to ship them.

Abe Livingston, a member of the corporation, testified that he was advised some time in September of appellant's intention not to ship any more goods. He referred to the letters of September 11 and 12, 1929, but did not say that they were in response to his orders for goods. About as near as any testimony fixes the approximate date is Livingston's, in which he says that he had a conference with the manager of the sales division at a time when appellee owed appellant about $3,800 or $3,900, and the manager agreed that if Livingston would send in one-half the amount he owed the appellant he would see that "we were continued on their list and that he would fill the orders for us." He also says he wrote to his brother to. this effect and his brother sent in the check for $1,800 or $1,850, and he says:

"We waited for them to tell us they would ship us the goods, but they never did."
The testimony shows that the check referred to. was of date June 17, 1929.

Appellant in its original petition alleges that appellee's account was due and owing to it on August 1, 1929, and it sought interest on the amount from that date.

The foregoing embodies all the testimony which would throw any light on the question as to when the contract was terminated by a failure to fulfill orders of the appellee.

The difficulty in this case arises from the fact that the court did not enter judgment in accordance with its findings of facts and law conclusions. The opinion on the first appeal became the law of the case on the

second trial, and the court seems to have followed the opinion, if by the use of the words "finally breached," with reference to the contract, it was intended to mean the Congoleum-Nairn exercised "its right to terminate it."

The court found that appellant "finally breached" the contract by its failure to fill orders of the appellee, though it was theretofore breached by the shipment of goods to competitors of appellee. The court seems to have concluded by its findings that while there was a breach by selling to competitors, such a breach did not necessarily constitute a termination of the contract.

Having found the final breach or termination of the contract to have been as of August 1, 1929, it cannot be perceived on what basis the court rendered judgment for damages of any nature occurring after that date, and that such was the case seems an inescapable conclusion, and this court may look to see if the judgment conforms to the law and facts.

From a survey of the undisputed proof it seems very clear that one sale to the Union City merchants to the amount of $3,629.22 was of date August 28, 1929. The former sale to the same firm of $5,496.96 in amount was of date April 28, 1929, and the court gave damages at the 11 per cent. rate, approximately on the total of both shipments. When we observe the sales to the Cairo firm, we find that those sales ran from February 11, 1929, to and including September 11, 1929. There is no dispute as to the correctness of dates in either instance. These sales totaled $12,382.58. The court gave judgment for approximately 11 per cent. of the total sales. Of these total sales to Cairo merchants, $4,057.01 worth of merchandise was sold after August 1, 1929. The probable profit on sales after that date should not have been allowed, since the findings of fact and the opinion of this court on the former appeal do not justify allowance of such damages, but would allow such damages as resulted from sales to others prior to that date.

Some complaint is made that the basic percentage rate of 11 per cent. profit is too high. On this point there seems to have been no proof offered by appellant, and therefore this court concludes that the court's finding of facts is correct and that under the findings the laws was correctly applied.

Appellant contends that the court erred in refusing to allow interest on the open account against appellee from what is claimed to be the due date thereof. Appellant claims that the account was due on or about June 15, 1929, and bases its conclusion on the conversation between Mr. Campbell and Mr. Livingston, wherein it was apparently agreed that Livingston then owed appellant a balance of $3,800, or more, and that proposal was made with regard to the restoration of appellee to its former status upon payment of approximately one-half the account; this understanding being followed by the sending of a check to appellant for about one-half the amount claimed to be owing, the date of which appears to have been June 17, 1929.

In plaintiff's petition appellant sued appellee for the sum of $3,979.91, subject to a credit of $2,134.89, leaving a balance due of $1,845.02, for goods sold to appellee in March, 1929, and it is alleged that the account was "long past due"; and in its prayer petitioner asks judgment for the balance with interest from the 1st day of August, 1929.

In answer Livingston & Co. denied the balance due, because, as it says, "plaintiff is indebted to it on account of the matters and things hereinafter set out," and then pleads its counterclaim. There is an absence of proof or pleading which would in any wise indicate that appellee was disputing the account due appellant. The pleading was in effect an admission that it did owe the exact amount, and that it was due at least on the date from which interest was asked.

The claim of Congoleum-Nairn was a liquidated one; the claim of Livingston & Co. was unliquidated. Under this state of case the court should have allowed interest on the Congoleum-Nairn account from August 1, 1929, up to the time of judgment. The claim of appellee did not become liquidated until the court had found for it upon its asserted counterclaim. The rule in this commonwealth is that interest runs as a matter of right on a liquidated demand, but upon an unliquidated demand the allowance of interest is in the discretion of the court or jury trying the case. Henderson Cotton Mfg. Co. v. Lowell Machine, 86 Ky. 668, 7 S. W. 142, 9 Ky. Law Rep. 831; Gregory v. New Home Sewing Machine Co., 86 S. W. 529, 27 Ky. Law Rep. 741.

Since there was ho dispute as to the amount of appellee's account and as to due date, the court should have allowed appellant interest on its account from August 1, 1929, to the date of judgment, and the judgment on the counterclaim should have been offset by the amount of appellant's account with interest thus ascertained.

Judgment reversed, and cause remanded for a new trial and proceedings consistent with this opinion.