NUCOR CORPORATION, Appellant,

v.

GENERAL ELECTRIC CO.; Arkwright-Boston Manufacturers Mutual Ins. Co.; Industrial Risk Insurers; Garst-Receveur Construction Company; and Harman & Conway, Inc., Appellees.

HARMAN & CONWAY, INC., Cross-Appellant,

v.

NUCOR CORPORATION; General Electric Co.; Arkwright-Boston Manufacturers Mutual Insurance Co.; Industrial Risk Insurers; and Garst-Receveur Construction Co., Inc., Cross-Appellees.

GENERAL ELECTRIC CO.; Arkwright-Boston Manufacturers Mutual Insurance Co.; and Industrial Risk Insurers, Cross-Appellants,

v.

NUCOR CORPORATION; Garst-Receveur Construction Co., Inc. and Harman & Conway, Inc., Cross-Appellees.

Nos. 89-SC-802-DG, 90-SC-208-DG, 90-SC-209-DG.

Supreme Court of Kentucky.

May 9, 1991.

As Modified May 13, 1991.

Rehearing Denied Aug. 29, 1991.

Winfrey P. Blackburn, Jr., W. Kennedy Simpson, Michael G. Whitaker, Stites & Harbison, Louisville, for Nucor Corp.

Virginia H. Snell, Sheryl G. Snyder, Mary E. Barrazotto, Ann Michelle Turner, Wyatt, Tarrant & Combs, Louisville, for G.E., Arkwright and Industrial Risk.

A. Campbell Ewen, Ewen, Ray & Morris, Thomas G. Mooney, Edward H. Bartenstein, MacKenzie & Peden, P.S.C., Louisville, for Garst–Receveur.

A. Courtney Guild, Edward L. Schoenbaechler, Stephen E. Smith, Goldberg & Simpson, P.S.C., Louisville, for Harman & Conway.

LEIBSON, Justice.

This is a complex case with an even more complex history. On July 13, 1977, a warehouse roof at General Electric Company's Appliance Park in Louisville, Ky., partially collapsed causing substantial damage to the warehouse and numerous appliances stored in the warehouse. In August, less than a month later, another partial roof collapse occurred to the same warehouse resulting in further damage. Both failures occurred because the joist girders, or trusses, manufactured by Nucor Corporation and intended to support the roof, failed to do so. Through an error in the manufacturing process, the trusses were fabricated to only one half the design strength required by the specifications.

General Electric had employed Garst–Receveur Construction Company as principal contractor to construct the warehouse. Garst–Receveur entered into a purchase order contract with Harman & Conway, Inc., the manufacturer's representative for Nucor in the Louisville area, which required Harman & Conway to furnish "all steel joint and joist girders" for the roof support system. Harman & Conway then entered a standard purchase order with Nucor.

General Electric filed suit in February 1979, naming Nucor, Garst–Receveur, and Harman & Conway as defendants. The Complaint alleged theories of liability in negligence, breach of warranty and strict liability in tort for a defective product. All these alternative theories were based on a single premise: General Electric had contracted for the construction of the warehouse with Garst–Receveur who used defective joist girders manufactured by Nucor and supplied by Harman & Conway.

At the close of the proof, Nucor moved to dismiss General Electric's breach of warranty claim as barred by the Uniform Commercial Code statute of limitations, KRS 355.2–725, which requires suit "commenced within four (4) years after the cause of action has accrued." KRS 355.2–725(2) further specifies the "cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." This meant limitations had run on General Electric's breach of warranty claim at the time of substantial completion of the structure, which was more than five years before suit was filed. Nucor had failed to perform according to the written contract specifications for the joist

girders and this contract and its breach were part of the evidence.

The joist girders admittedly failed to meet specifications and were defective; who was responsible for the loss and the amount of damages were in dispute until conclusion of the trial in January of 1987. At the close of the evidence the trial court: (1) dismissed the breach of warranty claims because the statute of limitations had run before suit was filed, but then permitted General Electric to amend to a breach of contract based on the same evidence; and then (2) directed a verdict for General Electric against Nucor, Garst–Receveur and Harman & Conway on the products liability theory and also (3) entered a directed verdict against Garst–Receveur for breach of contract. Later, the final judgment provided that Garst–Receveur and Harman & Conway were each entitled to indemnity against Nucor for the products liability recovery, but, as we will discuss, it is not clear whether it provided for indemnity for the separate judgment awarded for breach of contract.

The trial court decided there was a factual issue as to whether and to what extent General Electric was at fault and should share responsibility for the damages occasioned by the second roof collapse. This issue was submitted to the jury to decide based on findings of "actual knowledge as to the extent of the dangerous condition of the truss that failed on August 8, 1977" and whether General Electric "acted unreasonably in failing to remedy such dangerous condition." The jury was instructed to apply the comparative fault principle, to "consider both the nature of the conduct of the parties and the extent of the causal relationship, if any, between the conduct and the damages claimed." Under these Instructions the jury found the defendants 80% at fault and General Electric 20% at fault.

Under instructions covering compensatory damages which are no longer disputed, the jury awarded General Electric damages for "cost of repair for the warehouse structure," and "difference between the fair market value of the appliances and other personal property" within the structure, "immediately before and immediately after the two subject roof failures," of $505,438 for the first roof collapse and $285,775.86 for the second roof collapse, a total of $791,213.86. This was the amount of the final judgment for General Electric and its insurers under the breach of contract theory. The final judgment for General Electric and its insurers on the products liability claim was reduced by the 20% share of fault for the second roof collapse apportioned to General Electric by the jury, so that the final judgment on the products liability theory was $734,058.69, or $57,-155.17 less than the award for breach of contract. Under Paragraph Three of the Final Judgment the plaintiffs cannot recover for both tort and contract since both relate to the same subject matter. Presumably if the breach of contract award were to be set aside on appeal and the products liability award sustained, plaintiffs then recover the lesser amount assigned to the products liability recovery.

The principal issue at this level concerns a jury award of $1,526,084.73 in prejudgment interest, an issue presented to the jury in the second stage of a bifurcated procedure. To understand this issue we must review some history. As previously stated, General Electric's cause of action accrued in July and August of 1977. General Electric filed suit in February 1979 and requested a trial date in August 1981. The first available trial date was April of 1983. On April 1, 1983, by Third Amended Complaint, General Electric added prejudgment interest to its claim for damages. Trial was then rescheduled and before the new trial date, in November 1983, the trial court dismissed the products liability claim holding that this theory was barred by KRS 413.135, a statute then providing that "no action" could be brought after the expiration of five years following substantial completion of any improvement to real property against persons engaged in its "design, planning, supervision, inspection or construction" for damages or injury caused by any deficiency. Trial of this case was postponed during the appeal of the summary judgment granted on this is-

sue. This appeal was consolidated with another case involving the same issue, and the consolidated appeal was finally disposed of by an opinion of this Court reported as *Tabler v. Wallace*, Ky., 704 S.W.2d 179 (1986), holding KRS 413.135, the "no action" statute, unconstitutional in violation of the Ky. Const. § 59(5), which prohibits the General Assembly from enacting special legislation for the protection of a single individual or group to the exclusion of others similarly situated.

This case was then remanded to the trial court and trial was rescheduled once again for January 1987. About one month before the trial date the trial court dismissed the prejudgment interest claim in an Order stating "the claims ... are for unliquidated property damages," and "the question of allowance of prejudgment interest is a matter addressed to "the Court in its sound discretion" and not justified in present circumstances. A few days later, to forestall delay of the trial once again, this time to decide an appeal of the prejudgment interest question, the trial court further ordered that notwithstanding its ruling on prejudgment interest, "all issues relating to prejudgment interest, including proof thereon, shall be submitted to the jury in a bifurcated fashion after the jury has returned its verdict as to all other issues in the case, if that verdict includes an award of money damages to ... the plaintiffs." Utilizing this arrangement, after the jury verdict for compensatory damages, the trial court permitted the defendants to introduce expert testimony from two economists in support of their theory that the jury award of compensatory damages for property damage was not sufficient to fully compensate for General Electric's loss. The experts then presented interest calculations based on the jury's award for compensatory damages as to the additional amount in interest which should be awarded to compensate for the "time value of money." The trial court then submitted an instruction to the jury permitting prejudgment interest, stating in pertinent part as follows:

"You have awarded Plaintiffs the sum of $734,058.69. You now may or may not, in your discretion, as you believe from the evidence is equitable and just, award interest not to exceed $2,539,653.47, the amount claimed."

The jury instructions further advised that if interest is awarded, it must "be reasonable in rate" and "should be compounded."[1] It then stated that in awarding interest the jury "may consider the following factors":

"(a) The date of the injuries;

(b) The date of the filing of this action on February 9, 1979;

(c) The date of notice to defendants of the prejudgment interest demand;

(d) The extent to which the amount of damages were or were not reasonably ascertainable."

Pursuant to these instructions the jury returned an award of prejudgment interest of some 1.5 million dollars, 1 million less than the amount claimed. But the final judgment, in accord with the pretrial order holding prejudgment interest was an issue for the court to decide and that such interest should not be awarded under the facts in this case, dismissed the claim for prejudgment interest.

All sides appealed the final judgment to the Kentucky Court of Appeals. Three of them, Nucor Corporation, General Electric Company, and Harman & Conway, Inc., by grant of discretionary review, have further appealed certain adverse rulings in the Court of Appeals to our Court. The issues now before us are as follows:

1) On the subject of prejudgment interest, the Court of Appeals reversed the trial court, holding that "under the facts presented in this case, the claim for prejudgment interest was for the jury to decide." The Court of Appeals remanded for the trial court to enter a judgment reinstating the jury award of some 1.5 million in prejudgment interest. On discretionary review Nucor argues the award of prejudg-

---

**1.** We note that under *Restatement (Second) of Torts* § 913 comment on subsection (1)(b) (1977), compound interest was inappropriate even if interest was otherwise proper. But this is not germane to the issues we need to address.

ment interest was not justified, and that, in any event, under the facts in this case whether to award prejudgment interest was a matter for the trial court to decide, and not for the jury to assess.

2) The Court of Appeals held "the trial court abused its discretion in allowing General Electric to amend its complaint to assert a breach of contract claim." The effect of the Court of Appeals' decision is to strike out the $791,212.86 award made under the breach of contract theory and to restrict the award of compensatory damages to the amount due under the products liability theory. The award made under the products liability theory would be a reduced amount because the jury found contributory fault against General Electric. This would be a complete bar to the award of damages for the second roof collapse, or a partial bar, depending on whether the comparative negligence principle announced in *Hilen v. Hays,* Ky., 673 S.W.2d 713 (1984), applies to this case.

3) Nucor contends that the jury finding of contributory fault against General Electric in connection with the second roof collapse should be a complete bar to recovery for the compensatory damages assigned to the second roof collapse, rather than only a 20% bar under the comparative fault principle established in *Hilen v. Hays, supra. Reda Pump Co., a Div. of TRW, Inc. v. Finck,* Ky., 713 S.W.2d 818 (1986), held that *Hilen v. Hays* did not apply to products liability actions covered by the Product Liability Act of 1978, KRS 411.300 *et seq.,* because of KRS 411.320(3), a subsection specifying that if the plaintiff is negligent "in his use of the product, and such failure was a substantial cause of the occurrence that caused injury or damage to the plaintiff, the defendant shall not be liable whether or not said defendant was at fault or the product was defective." The Court of Appeals held that because: (1) *Hilen v. Hays* "adopted comparative negligence for all cases tried or retried after the opinion in that case was rendered"; (2) here the cause of action accrued in 1977, a year before the effective date of the Products Liability Act; and (3) a statute "cannot be given retroactive effect unless the

legislature clearly evidences this intent KRS 446.080(3)"; the finding that General Electric was 20% at fault for the roof collapse was a proportionate bar, rather than a complete bar, to its right of recovery. On discretionary review Nucor argues the Court of Appeals has "misinterpreted" our decision in *Hilen v. Hays.*

4) The trial court permitted Garst–Receveur and Harman & Conway judgment over against Nucor for indemnity as to the money judgment for compensatory damages against them in favor of General Electric Company, but the trial court denied indemnity for attorneys fees and other litigation expenses. The Court of Appeals affirmed, and one of these parties, Harman & Conway, seeks to reverse the Court of Appeals.

## I.  PREJUDGMENT INTEREST

We elect to discuss first the question of prejudgment interest, because we consider this the most significant issue presented.

■ There is surprisingly little law in Kentucky of recent vintage discussing whether, when and how prejudgment interest should be awarded in claims for property damages. To answer these questions we must go back to basics. When the damages are "liquidated," prejudgment interest follows as a matter of course. Precisely when the amount involved qualifies as "liquidated" is not always clear, but in general "liquidated" means "[m]ade certain or fixed by agreement of parties or by operation of law." *Black's Law Dictionary* 930 (6th ed.1990). Common examples are a bill or note past due, an amount due on an open account, or an unpaid fixed contract price. In the present case, all parties agree the amount due General Electric for its property damage qualifies as "unliquidated," defined in Black's as "[d]amages which have not been determined or calculated, ... not yet reduced to a certainty in respect to amount." *Black's supra* at 1537. The questions here are: (1) when is interest due on an unliquidated amount, and, more specifically, when is it due as damages; and (2) where the ques-

tion of interest as damages is in dispute, who resolves the issue, judge or jury?

■ As previously stated, the final judgment reflected the trial court's decision that an award of prejudgment interest was for the court, not the jury, to decide, and here it was not justified. The Court of Appeals reversed with directions to allow prejudgment interest as awarded by the jury, taking the position "the award of interest on unliquidated claims is within the discretion of" whoever is "trying the case," whether judge *or* jury. With the exception of two old cases, *Schulte v. Louisville & N.R. Co.*, 128 Ky. 627, 108 S.W. 941 (1908), and *Louisville & I.R. Co. v. Schuester*, 183 Ky. 504, 209 S.W. 542 (1919), the Kentucky cases cited in the Court of Appeals' Opinion do not support its result. Other Kentucky cases cited in the Court of Appeals' Opinion, *Henderson Cotton Mfg. Co. v. Lowell Machine–Shops*, 86 Ky. 668, 7 S.W. 142 (1888); *Congoleum–Nairn, Inc. v. M. Livingston & Co.*, 257 Ky. 573, 78 S.W.2d 781 (1935), and *State Farm Mut. Auto. Ins. Co. v. Reeder*, Ky., 763 S.W.2d 116 (1988), all dealt with breach of contract situations where the amount due was fixed and definite at the time payment was refused, so that interest followed as a matter of course for what was, in substance, an unpaid debt.

*Schulte v. Louisville & N.R. Co., supra,* and *Louisville & I.R. Co. v. Schuester, supra,* are factually in point in that they involve tort claims for property damages, but we view *Schulte* not so much as a prejudgment interest case as a beginning stage in the development of the concept of allowing damages for loss of use of business property during the period necessary to repair or replace it, and *Schuester* as nothing more than a discussion of *Schulte.*

*Schulte* holds "the jury should have been instructed that, if they found for plaintiff, they might in their discretion allow him interest on the sum found as the value of the property destroyed from the date of the injury, and, as to the horse that was injured up to the time the owner was fully restored to his use and possession." 108 S.W. at 942. The court explains:

"If the recovery was limited to the value, he would receive no compensation for the deprivation of the use between the time of the injury and the trial, or the date he was restored to the use and possession if this happened before the trial, and the recovery would not be adequate recompense for the loss." *Id.* at 943.

. . . .

"And, where damages are sought for the injury done the property, as well as damages for the deprivation of its use, interest is not allowable, as the recovery for the use takes the place of interest. In other words, a party may sue for the injury done personal property, and the jury may in their discretion allow him interest on the sum found, and should be so instructed, or he may sue for damages occasioned by the injury and also for the loss of the use, but he cannot recover interest as well as damages for the loss of the use." *Id.* at 944.

In *Schuester*, another case in which a railroad train ran over plaintiff's personal property, our Court affirmed an instruction permitting a jury award for the "reasonable net rental value" of a motor truck during the period necessary for repairs, or, if the truck was beyond repairs, during the period necessary to replace the truck with another of like capacity. Although the *Schulte* case was cited and quoted at length, an award of interest was not involved. The reason for citing *Schulte* was to explain that this "most recent opinion has so relaxed the ancient rule, which limited the recovery for destruction of personal property to its market value at the time and place of the injury, that the recovery may include, in addition to the value, such consequential damages as proximately result and are susceptible of accurate estimation. . . ." 209 S.W. at 545. The court goes on:

"So the correct rule, if the compensation is to be as nearly adequate as the circumstances will permit, as it, of course, should be, is to allow consequential damages when they can be accurately estimated, but to reject them, as too remote or speculative for judicial ascertainment, whenever they are incapable of accurate

estimation. This is the general rule applicable to all damages, long applied in this state and elsewhere for injury to personal as well as real property, and for breach of contract, and there is no good reason why it should not also apply to the destruction of personal property." *Id.*

These two cases, *Schulte* and *Schuester,* are but a stage in the development of the general rule, now accepted as a matter of course, that consequential damages are recoverable in tort as well a contract, *in appropriate circumstances.* On occasion interest may be an appropriate part of consequential damages, but this does not mean interest is appropriate here, nor does this answer the question of whether an award of prejudgment interest should be decided by the court as a matter of equity, or by the jury as a fact question? With the single exception of the *Schulte* case, we know of no Kentucky case suggesting a jury should be permitted to award prejudgment interest in its discretion as an additional element of compensatory damages, albeit there are several cases cited to us wherein there is a casual reference made to "court or jury" without explanation.

There are significant reasons why the decision whether to award interest should rest with the trial court.

First, the issue is a matter of "equity" as the Court explains in *Dalton v. Mullins,* Ky., 293 S.W.2d 470 (1956), a case involving an award of interest by the trial judge for failure to pay for deliveries of coal according to contract:

> "We are not so much disturbed as to whether the claim is liquidated or unliquidated as we are, in accordance with the popular trend, as to *whether justice and equity demand an allowance of interest to the injured party.* It is with this in mind that there has been promulgated the rule that even on unliquidated claims allowance of interest is discretionary with the court." *Id.* at 477. [Emphasis added.]

A number of other Kentucky cases explain that the award of interest is within the judicial discretion of the trial court.

*See,* for example, *Curtis v. Campbell,* Ky., 336 S.W.2d 355 (1960); *Beckman v. Time Fin. Co.,* Ky., 334 S.W.2d 898 (1960); *Avritt v. O'Daniel,* Ky.App., 689 S.W.2d 36 (1985). In 47 C.J.S., "Interest and Usury," § 6 (1982), the underlying principles are thus explained:

> "Interest is charged not only because of the value to the one who uses money, but also as compensation to the one who has been deprived of the use of money. Interest is not recovered according to a rigid theory of compensation for money withheld, but is given in response to considerations of fairness; it is denied when its exaction would be inequitable .... the tendency of the courts is to charge and allow interest in accordance with the principles of equity, to accomplish justice in each particular case."

Next, the considerations bearing on when an award of interest is appropriate as part of consequential damages are not disputed fact issues appropriate for a jury to decide, but the weighing of equitable considerations which are within the province of the judge.

■ We accept the premise that interest may be appropriate as consequential damages in tort as well as contract, as provided for in the *Restatement (Second) of Torts* § 913. The *Restatement* states in § 913, in pertinent part:

> "(1) Except when the plaintiff can and does elect the restitutional measure of recovery, he is entitled to interest upon the amount found due
>
> (a) for the taking or detention of land, chattels or other subjects of property, or the destruction of any legally protected interest in them, when the valuation can be ascertained from established market prices, from the time adopted for their valuation to the time of judgment, or
>
> (b) except as stated in Subsection (2), for other harms to pecuniary interests from the time of the accrual of the cause of action to the time of judgment, if the payment of interest is required to avoid an injustice."

But our review of the *Comment on Subsection (1)* of § 913 (Comment a), suggests the decision whether to award interest under this section is an equitable matter:

"Ordinarily, if the sum due is sufficiently definite, so that the tortfeasor has reason to know the amount he should pay or its approximate amount, it would be unjust not to allow interest from the time when he should have made payment. On the other hand, if the amount is unliquidated, justice may not require the payment, particularly if the injured person has discouraged settlement by making exorbitant demands or has delayed in filing suit."

In the present case the trial judge did not refuse to consider an award of interest. On the contrary, he made a decision that, applying equitable principles, interest was simply not appropriate. He stated his reasons as follows:

"[T]he Court, in its discretion, having determined that prejudgment interest is not appropriate considering all of the facts and circumstances of this case, including the fact that plaintiffs have conceded that this is an unliquidated claim for property damage, that the amount of the claim was not reasonably ascertainable until the jury rendered its verdict, that neither the complaint, the first amended complaint, nor the second amended complaint contained a prayer for prejudgment interest, that plaintiffs did not assert a claim for prejudgment interest until April 1, 1983. That defendants made substantial settlement offers (in excess of $500,000) in 1983, that the insurance company plaintiffs did not pay any policy claims until January of 1980, that substantial portions of the 10–year delay in this case were not attributable to the defendants, that the issue of General Electric's negligence was an issue for the jury, and the fact that plaintiffs' claim was barred by the statute of limitations until the statute was held unconstitutional effective February 27, 1986."

We agree with the trial court that the responsibility for deciding whether to award interest was one for the court, not the jury.

■ As previously noted, the underlying theory of recovery here involved both tort and warranty, or breach of contract. The award of prejudgment interest, as it would apply to the contract theory in this case, is covered in the *Restatement (Second) of Contracts* § 354, "Interest as Damages," as follows:

"(1) If the breach consists of a failure to pay a definite sum in money or to render a performance with fixed or ascertainable monetary value, interest is recoverable from the time for performance on the amount due less all deductions to which the party in breach is entitled.

(2) In any other case, such interest may be allowed as justice requires on the amount that would have been just compensation had it been paid when performance was due."

Thus, where the subject matter of the breach of contract claim falls under subsection (1) above, interest is due as a matter of course, and where, as in this case, it falls under subsection (2) above, interest "may be allowed as justice requires." Both subsections presuppose the trier of fact, judge or jury, has decided both the question of breach of contract and the amount due for the breach before reaching the question of interest as damages. Neither subsection specifies whether judge or jury should then decide the question of interest as damages. But Comment d to § 354 explains:

"In such cases, the award of interest is left to *judicial discretion*, under the rule stated in Subsection (2), in the light of all the circumstances, including any deficiencies in the performance of the injured party and any unreasonableness in the demands made by him." [Emphasis added.]

Thus, we conclude the decision whether to award interest under the *Restatement (Second) of Torts* § 913, or the parallel decision that must be made under *Restatement (Second) of Contracts* § 354, both involve "judicial discretion," not issues of fact for a jury to decide. We note that

*before* the trial court decided not to award prejudgment interest, General Electric stated in a brief to the trial court on this subject:

> "Since General Electric's claim in this action is unliquidated, and will not become liquidated until judgment in General Electric's favor is obtained, this court is not required to grant pre-judgment interest, but may do so if, in its discretion it believes under the facts and circumstances of this case that equity and justice requires such an award."

■ We decide *now* in accord with what General Electric stated *then*. The decision whether to award interest here rested with the trial court. The trial court balanced the undisputed facts and equities and decided prejudgment interest was not appropriate. This discretion was not abused.

## II. AMENDMENT TO CONFORM TO THE PROOF

At the close of the evidence the trial court sustained a motion dismissing General Electric's breach of warranty claim as barred by the statute of limitations for such claims as found in the Uniform Commercial Code, KRS 355.2–725. Because the written contract between General Electric and Garst–Receveur included the specifications for the joist girders and was in evidence, as well as the proof regarding its breach, the trial court then permitted amendment of the pleadings to include a breach of contract claim with a 15–year statute of limitations (KRS 413.090(2)), thus utilizing the same evidence to substitute breach of contract for breach of warranty and thus obviating the statute of limitations problem.

■ The issue is whether the trial court abused its discretion in permitting the pleadings to be amended. If not, the final judgment against Garst–Receveur on

the theory of breach of contract, which was $791,213.86, must be affirmed.[2]

Our Civil Rule 15.02, *Amendments to Conform to the Evidence,* is the same as Rule 15(b) of the Federal Rules of Civil Procedure. It provides that "amendments necessary to cause the pleadings to conform to the evidence and to raise issues actually tried by express or implied consent may be permitted on motion at any time, even after judgment." Bertelsman and Philipps, *Ky. Prac.,* 4th Ed, Civil Rule 15.-02. Here the defendants elected a strategy wherein they did not bring up the time-bar defense to the breach of warranty theory until the close of the evidence, and this strategy permitted proof of breach of contract. When the trial judge permitted amendment to conform to the evidence, the defense strategy backfired.

■ Bertelsman & Philipps explains "[o]ne of the reasons" for the rule "is to take cognizance of the issues that were actually tried." *Id.*

> "The Rule goes further than authorizing amendments to conform to the evidence. It provides that if issues not raised by the pleadings are tried by express or implied consent, they shall be treated as if they had been so raised.
>
> . . . .
>
> The decision whether an issue has been tried by express or implied consent is within the trial court's discretion and will not be reversed except on a showing of clear abuse.
>
> . . . .
>
> It seems clear that at the trial stage the only way a party may raise the objection of deficient pleading is by objecting to the introduction of evidence on an unpleaded issue. Otherwise he will be held to have impliedly consented to the trial of such issue." *Id.* at 318–19.

---

**2.** a) Under the breach of contract theory General Electric's contributory fault may have been a reason to mitigate the damages. *See Restatement (Second) of Contracts* § 350, "Avoidability as a Limitation on Damages." But this issue has not been pursued. Thus, General Electric's contributory fault is not even a partial bar to recovery of the award for breach of contract.

b) Seemingly, the final judgment includes indemnity for both contract and tort damages under Paragraphs 3 and 5, but curiously, "not to exceed a total of $734,058.69," which is the final sum under the tort theory when reduced $57,-000 for General Electric's comparative fault in the second roof collapse.

We adopt these quotes as a fair statement of how the rule should apply, and how it was applied by the trial judge, in this case. General Electric had relied upon its contract with Garst–Receveur beginning with its original complaint in 1979. Whether styled breach of warranty or breach of contract, the factual basis for the claim was the same. Nine years later, after the proof was in this case, the time bar for breach of warranty in the Uniform Commercial Code, a defense that was always available, was brought to the trial court's attention. We agree with General Electric that the defendants should have anticipated that dismissal of the breach of warranty claim at this stage as time-barred would yield nothing more than repleading the same claim as a breach of contract. The proof necessary to establish the breach of contract was already in evidence, presented in support of the breach of warranty claim, all without objection. The present circumstances qualify under the terms of CR 15.02 as "issues not raised by the pleadings" but "tried by ... implied consent" of the parties, which "shall be treated in all respects as if they had been so raised" in the pleadings. Bertelsman & Phillips, as quoted *supra.*

In reversing the trial court on this point, the Court of Appeals took the view that "there could be no implied consent where the opposing party could not even have been aware that an issue extraneous to the pleadings was being presented." We disagree. Cases cited by General Electric, including *D. Federico Co., Inc. v. New Bedford Redev. Auth.*, 723 F.2d 122 (1st Cir.1983), and *Doralee Estates, Inc. v. Cities Serv. Oil Co.*, 569 F.2d 716 (2nd Cir.1977), take the view that the theory of implied consent does not turn on actual consent but on actual prejudice. The concept of actual prejudice is not related to winning or losing, but to being unable to present a defense which would have been otherwise available. At no time did Garst–Receveur or any defendant suggest a potential defense to the breach of contract theory was foreclosed by permitting the amendment to conform to the evidence.

In *Mains v. United States*, 508 F.2d 1251, 1260 (6th Cir.1975), the court stated:

"In no event would we want to hold that an otherwise valid claim for refund should be denied by a Court merely because the claimant may have also relied on inapplicable subsections of a section of the Internal Revenue Code."

In *de Haas v. Empire Petroleum Co.*, 435 F.2d 1223, 1229 (10th Cir.1970), the court stated:

"The test for allowing an amendment under Rule 15(b) to conform pleadings to issues impliedly tried is whether the opposing party 'would be prejudiced by the implied amendment, i.e., whether he had a fair opportunity to defend and whether he could offer any additional evidence if the case were to be retried on a different theory.'" [Authorities cited.]

"Applying the above test to the circumstances of the instant case," the U.S. Court of Appeals then concluded, "there was no abuse of discretion in granting the amendment" because the "question ... had always constituted a large part of plaintiff's cause of action" and the "basic issues connected with the First Claim" were essentially the same as on the new theory. *Id.* The court rejected the view that Rule 15.02 should not apply because consent to new issues cannot be implied where the same evidence relates to other issues already being tried.

We agree with General Electric's position that Rule 15 is a tool given the courts to facilitate having cases decided on their merits rather than as "a game of skill in which one misstep by counsel may be decisive to the outcome." *Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957).

This accords with our decision in *Williams v. Fulmer*, Ky., 695 S.W.2d 411 (1985), holding that, regardless of the different theories which may be pled in a products liability action, at time of trial the question is whether the proof supports a particular theory.

CR 15.02 was used appropriately in present circumstances.

## III. CONTRIBUTORY FAULT

Our decision affirming the trial court in permitting General Electric to amend to include breach of contract, makes the further question whether contributory fault on the part of General Electric as to the second roof collapse should be a partial or a complete bar to a recovery for this occurrence of doubtful significance.

■ However, the practical effect of deciding the issues presented has been neither briefed nor argued before this Court, so we hesitate to leave unanswered the question raised regarding application of the contributory fault principle. This litigation has gone on far too long and become far too complex already. It suffices to say, for purposes of this opinion only, that we view the resolution of the comparative fault issue in the Court of Appeals, which we have set out earlier in this Opinion, as a proper application of the principles involved. The Court of Appeals affirmed the trial court's decision applying the comparative fault principle to the respective liability of General Electric and the defendants for the second roof collapse, and we affirm the Court of Appeals in this respect.

## IV. INDEMNITY FOR ATTORNEY FEES AND EXPENSES

■ The last issue presented is Harman & Conway's claim for indemnity for attorney fees and litigation expenses incurred in defending this action. The final judgment in the trial court awarded Garst–Receveur and Harman & Conway judgments of indemnity against Nucor for any portion of the judgment which they may satisfy, not to exceed $734,058.69, the final award under the products liability theory.[3] The question is whether the acknowledged right to indemnity for the tort recovery should have included indemnity for attorney fees and litigation expenses. The Court of Appeals held that "the circuit court did not abuse its discretion" in failing

to award such expenses, and Harman & Conway has further appealed the denial of this award.

As Harman & Conway's Brief duly notes:

"[E]ach of the parties addressing this matter, including the Court of Appeals, generally acknowledges the same basic tenets of indemnity law: first, the general rule in Kentucky is that each party is responsible for its own fees and expenses; and, second, Kentucky recognizes exceptions to the general rule.... [O]ne such exception [is]:

'Where a person is obliged to defend against the act of another, against whom he has a remedy over, he may, if such other has notice of the suit and an opportunity to defend, hold him liable for the amount of damages recovered against himself and which he is compelled to pay, together with interest thereon, and also all reasonable and necessary costs and expenses incurred in such defense, including attorney's fees.'" *Middlesboro Home Tel. Co. v. Louisville and Nashville R.R. Co.*, 214 Ky. 822, 284 S.W. 104, 108 (1926).

Further, Harman & Conway concedes this exception to the general rule, which sometimes applies in indemnity cases, "depends on equitable factors." The leading case on this subject is *Chittum v. Abell*, Ky., 485 S.W.2d 231, 237 (1972), stating:

"[T]he allowance of such fees is not automatic in an indemnity judgment, but rather depends upon the equities of the situation, and particularly upon whether the indemnitor failed to provide adequate defense of the claim for damages."

*Chittum*, was a claim for damages from a motor vehicle collision against both the driver and the driver's employer. Both defended at trial against the claim the driver was negligent, and the employer further defended, unsuccessfully, by denying the

---

3. We are unaware of the reason why the final judgment should not have indemnified Garst–Receveur and Harman & Conway for breach of contract in the same manner as under the products liability theory. *See Restatement of Resti-* *tution,* § 76, *et seq.* No issue concerning the right to indemnity for the $57,000 difference between the breach of contract recovery and the tort recovery is preserved for review.

employee was on company business at the time. Applying law from the *Restatement of Restitution,* our Court held the employer was entitled to indemnity from its agent for the damages awarded, but *not* for legal fees and expenses, explaining as follows:

"[T]here are *two* duties on the part of the agent involved in a situation such as here presented. The first duty is not by negligent conduct to expose the principal to a *claim for damages.* The second, which arises after the first has been violated, is to *defend* against the claim for damages. In the instant case the agent employed counsel and vigorously defended the claim for damages, and there is no suggestion that there was any dereliction of duty in that regard. There was no antagonism of defenses. The corporation was not required to employ counsel to defend the damage claim, as far as concerned the liability of Mrs. Chittum to Millett and the Abells from which the corporation's liability as principal would arise. It is true that the corporation may have been required to employ counsel to make the defense that Mrs. Chittum was not an agent of the corporation at the time of the accident, but the duty to make that defense never was on the Chittum estate." [Emphasis original.]

Like *Chittum,* in present circumstances Garst–Receveur and Harman & Conway were "not required to employ counsel to defend the damage claim," insofar as liability turned on the defective condition of the joist girders. Nucor, which bore primary responsibility for the condition of these joist girders "employed counsel and vigorously defended the claim for damages, and there is no suggestion that there was any dereliction of duty in that regard." *Chittum,* as quoted above. The issues for which Garst–Receveur and Harman & Conway needed counsel involved charges they were responsible because of their personal and separate fault, entirely independent of Nucor's dereliction, "but the duty to make that defense never was on" Nucor. *Chittum,* as quoted above.

Thus, we consider *Chittum* as squarely in point on this appeal. We disagree with the Harman & Conway position that there is need to further clarify the law in this respect. Indeed, had the trial court granted indemnification for attorney fees and litigation expenses in the circumstances presented here, we would have viewed it as an abuse of discretion.

## V. CONCLUSION

For the reasons stated above in this Opinion, we affirm the trial court on all of the issues presently before us: prejudgment interest, amendment to conform to the evidence, the application of the comparative fault rule, and denying indemnity for attorney fees and legal expenses. We reverse the Court of Appeals where it differed from the trial court on two of those issues: prejudgment interest and permitting amendment to conform to the evidence.

The final judgment as entered by the trial court is affirmed.

STEPHENS, C.J., and LAMBERT, LEIBSON, REYNOLDS, SPAIN and WINTERSHEIMER, JJ., concur.

COMBS, J., concurs except as stated in his separate Dissenting Opinion.

COMBS, Justice, dissenting.

I respectfully dissent from so much of the majority opinion as disallows prejudgment interest. Supposing that the majority is correct in concluding that the issue was one properly addressed by the trial court as a matter of equity, I believe that the denial of any prejudgment interest in this case was patently inequitable, amounting to an abuse of judicial discretion.

*Restatement (Second) of Torts* § 913(1) Comment a (ante, p. 144) treats damages as essentially liquidated (by contradistinction) "if the sum due is *sufficiently* definite, so that the tortfeasor has reason to know the amount he should pay *or* its *approximate* amount...." (Emphasis added.) Even though a claim is not liquidated in the traditional sense of being ascertainable with absolute precision (which G.E. concedes to be the case here), a plaintiff is ordinarily entitled to interest nonetheless,

if the amount of damages can be determined to a fair approximation.

While it is true that G.E.'s damages were not reduced to a sum certain until the jury returned its verdict, the losses were from the outset susceptible of reasonably accurate estimation. The measure of damages adopted by the trial court was the cost of repair of the warehouse, plus the difference in the fair market value of the damaged personal property immediately before and immediately after each roof collapse. This appropriate calculus, which is no longer challenged, was readily available in 1977, and, had it been applied then, would have yielded a reliable estimate of harm.

The fact is that all parties had or should have had a fairly accurate idea of the plaintiffs' actual damages. The real bone of contention was the extent to which the defendants were *liable* for the damages resulting from the second roof collapse, considering G.E.'s alleged contributory negligence. Of course the *outcome* of a dispute over liability affects the *recovery* for damages. But is the *existence* of such a dispute germane to the *evaluation* of damages? Even if in equity it is, there was here no serious issue as to full liability for the first roof collapse, and no serious difficulty in estimating those damages separately.

In any event, like the court which decided *Dalton v. Mullins*, Ky., 293 S.W.2d 470 (1956) (ante, p. 143), I am less disturbed about whether the claim is liquidated or unliquidated than about whether justice and equity demand an allowance of interest to the injured party. In the present case, of the trial court's stated reasons for denying prejudgment interest (ante, p. 144), most are wholly unconvincing, and none of the others support more than an *adjustment* of the amount of interest awarded. The plaintiffs did not discourage settlement by making exorbitant demands, nor unreasonably delay the filing or prosecution of this action.

On the other hand, the record makes clear that a substantial award of prejudgment interest is necessary if G.E. is to have the complete relief to which it is entitled.

Under the court's instructions, the jury calculated damages based upon 1977 values, i.e., values "immediately before and immediately after the two subject roof failures." In effect, for the period of almost 10 years from the time of the harm until the date of judgment, the plaintiffs were wrongfully deprived of, while the defendants wrongfully enjoyed, the use of $734,058.69. Reasonable interest is an appropriate measure of the value of this use, and is in my view a remedy which justice and equity demand.