**UNIFUND CCR PARTNERS, Appellant**

v.

**Carol HARRELL, Appellee**

**2015-SC-000117-DG**

Supreme Court of Kentucky.

RENDERED: FEBRUARY 16, 2017

COUNSEL FOR APPELLANT: Joseph N. Tucker, Robert Herrick, Dinsmore & Shohl LLP, Louisville

COUNSEL FOR APPELLEE: James Robert McKenzie, Flatwoods

OPINION OF THE COURT BY JUSTICE KELLER

Unifund CCR Partners (Unifund) appeals the decision of the Court of Appeals to reverse the Nelson Circuit Court's dismissal of Carol Harrell's counterclaim pursuant to Kentucky Rule of Civil Procedure (CR) 12.02. This Court granted discretionary review, and for the reasons stated herein, we affirm the opinion of the Court of Appeals and remand to the circuit court for further proceedings.

## I. BACKGROUND.

In September 2007, Harrell entered into a credit card agreement with Citibank that included an interest rate of 27.24% on the principal amount. Harrell defaulted on her promise to repay the debt and, on January 18, 2011, Citibank "charged off" the account with an outstanding balance of $1,472.58.[1] At that point, Citibank stopped sending monthly account statements and, in compliance with 12 C.F.R. 226.5(b)(2)(1), ceased adding interest to Harrell's balance. Thus, no interest was assessed to Harrell's account during the remainder of Citibank's ownership of her debt. On November 21, 2011, Citibank sold and as-

signed Harrell's debt to Pilot Receivable Management, LLC, which then assigned the right to collect the outstanding debt to the Appellant, Unifund.

On April 10, 2012, Unifund filed a collection action against Harrell in the district court. In addition to the outstanding balance of Harrell's account, Unifund sought statutory pre-judgment interest pursuant to Kentucky Revised Statute (KRS) 360.010(1). In its complaint, Unifund alleged its damages totaled "the amount of the remaining charged-off balance of $1472.58 plus interest currently accruing (and continuing to accrue) at the rate of eight percent (8%) per annum on the charged-off balance from the charge-off date of 01/18/2011 (which currently totals $92.56) . . . ."

Harrell filed an answer, and an amended answer and counterclaim, in which she alleged that Unifund's request for statutory prejudgment interest was in violation of the federal Fair Debt Collection Practices Act (FDCPA). She argued that Unifund violated the FDCPA by unlawfully claiming interest for the time period between Citibank's decision to charge-off the debt and Unifund's acquisition of the debt. Because Harrell's counterclaim purported to be a class action, the matter was transferred to the Nelson Circuit Court.

Unifund filed a motion to dismiss Harrell's counterclaim, arguing that Citibank's decision to charge-off Harrell's debt did not waive Unifund's right to collect interest at Kentucky's statutory rate and that its complaint, seeking prejudgment statutory interest, did not violate the FDCPA.

The circuit court found that Unifund's actions did not violate the FDCPA and, therefore, granted Unifund's motion to dismiss Harrell's counterclaim for failure to

---

1. A "charge-off" is a method by which a bank's "debt is conclusively presumed to be worthless." 34 AM. JUR. 2D *Federal Taxation* 20435 (2016).

state a claim upon which relief could be granted. The circuit court transferred the case back to the district court, designated its order as final and appealable, and subsequently denied Harrell's motion to alter, amend, or vacate. Harrell appealed.

On appeal, the Court of Appeals reversed the circuit court, finding that it erred in concluding that Unifund's claim for statutory interest did not violate the FDCPA and in granting Unifund's motion to dismiss. For the reasons stated below, we affirm and remand.

■ In its opinion, the Court of Appeals cited to the Sixth Circuit Court of Appeals decision in *Stratton v. Portfolio Recovery Associates, LLC*, 770 F.3d 443 (6th Cir. 2014). We note that the Sixth Circuit's well-reasoned decision concerns a matter virtually identical to the appeal presently before us. While Kentucky courts are not bound by the holding of a federal court that construes state law in the course of a diversity action, *Embs v. Pepsi-Cola Bottling Company of Lexington, Kentucky, Inc.*, 528 S.W.2d 703, 705 (Ky. 1975), we agree with the Court of Appeals, and are equally persuaded that "the sound reasoning of the *Stratton* court does not supplant but properly comports with the statutory language of KRS 360.010(1) [and] [n]othing in Kentucky's statute—by specific language, implication, or innuendo—contravenes the purpose and spirit of the [FDCPA]." *Carol Harrell v. Unifund CCR Partners*, No. 13-CA-001514-MR, at 7-8 (Ky. Ct. App. Feb. 6, 2016).

## II. STANDARD OF REVIEW.

■ "A motion to dismiss for failure to state a claim upon which relief may be granted admits as true the material facts of the complaint." *Fox v. Grayson*, 317 S.W.3d 1, 7 (Ky. 2010) (internal citation omitted). "Accordingly, the pleadings should be liberally construed in the light most favorable to the plaintiff, all allegations being taken as true." *Id.* (internal citations omitted). A court should not grant such a motion "unless it appears the pleading party would not be entitled to relief under any set of facts which could be proved ...." *Pari–Mutuel Clerks' Union of Kentucky, Local 541, SEIU, AFL–CIO v. Kentucky Jockey Club*, 551 S.W.2d 801, 803 (Ky. 1977). "A motion to dismiss for failure to state a claim upon which relief may be granted is a pure question of law, thus, a reviewing court owes no deference to a trial court's determination; instead, an appellate court reviews the issue de novo." *Fox*, 317 S.W.3d at 7 (internal citation omitted).

## III. ANALYSIS.

To determine whether the trial court erred in granting Unifund's motion to dismiss for failure to state a claim upon which relief may be granted, we must first analyze whether KRS 360.010(1) provided for Unifund's recovery of statutory pre-judgment interest. If the statute did not provide therefor, we must then determine whether Harrell's claim that Unifund violated the FDCPA is viable.

### A. KRS 360.010(1).

KRS 360.010(1) (commonly known as Kentucky's usury statute) provides, in relevant part:

"The legal rate of interest is eight percent (8%) per annum, but any party or parties may agree, in writing, for the payment of interest in excess of that rate ... and any such party or parties, and any party or parties who may assume or guarantee any such contract or obligation, shall be bound for such rate of interest as is expressed in any such contract, obligation, assumption, or guaranty, and no law of this state prescribing or limiting interest rates shall

apply to any such agreement or to any charges which pertain thereto or in connection therewith . . . ."

■■ KRS 360.010(1) does not create an entitlement to statutory interest, rather, it sets a default interest rate in the absence of a contractually agreed upon interest rate. The parties agree that Citibank and Harrell contracted to a 27.24% interest rate. By contracting to an interest rate in excess of 8%, Citibank extinguished its right to charge an interest rate under KRS 360.010(1).

Following Harrell's default on her agreement with Citibank, it charged-off Harrell's account and stopped adding interest to Harrell's account, as required by federal law. See 12 C.F.R. 226.5(b)(2)(i) ("A periodic statement need not be sent for an account . . . if the creditor has charged off the account in accordance with loan-loss provision and will not charge any additional fees or interest on the account . . . .").[2]

■ Thus, at the point Citibank charged-off Harrell's account, it waived its right to collect the agreed-to interest on the account. (A waiver is "a voluntary and intentional surrender or relinquishment of a known right, or an election to forego an advantage which the party at his option might have demanded or insisted upon." *Greathouse v. Shreve*, 891 S.W.2d 387, 390 (Ky. 1995).) Therefore, Citibank had neither a statutory nor a contractual right to collect interest when it sold and assigned Harrell's debt to Unifund.

■ It has long been settled in our jurisprudence that "an assignee . . . acquires no greater right than was possessed by his assignor . . . ." *Whayne Supply Co. v. Morgan Constr. Co.*, 440 S.W.2d 779, 782

(Ky. 1969); *see, e.g., Porter v. Breckenridge*, 3 Ky. 21 (Ky. 1805) ("[T]he complainant, being the assignee of an equity, took it subject to all the circumstances and equity which was attached to it in the hands of the original obligee."). An assignee "simply stands in the shoes of the [assignor], subject to all equities and defenses which could have been asserted against the chose in the hands of the assignor at the time of the assignment." *Whayne Supply Co.*, 440 S.W.2d at 782–83.

Citibank had a right to collect contractual interest—a right it elected to take in place of its right to collect statutory interest. By then forgoing its right to collect contractual interest during the ten months following the charge-off of Harrell's account, Citibank waived its right to collect that interest. Consequently, Unifund acquired no greater right to collect interest on Harrell's account than Citibank had at the time the debt was assigned. As the *Stratton* court posited, "[C]an someone collect interest if they agree not to collect interest? The answer must be no." *Stratton*, 770 F.3d at 447. "A party's right to collect statutory interest is extinguished, superseded by her right to collect an interest rate she has specified by contract. A court must honor that party's choice—even if it is a choice it or its assignee later regrets." *Id.* We agree.

Unifund directs this Court's attention to Kentucky case law dating back to 1802 that it asserts mandates entitlement to statutory pre-judgment interest. These cases are easily distinguished from the present matter because none of them involve a contractually agreed upon interest rate between the parties.[3]

---

**2.** As Harrell noted in her brief, Citibank's decision to charge-off her debt was likely one of business strategy, which permitted it to reduce the amount of bad debt held, thereby, improving the bank's overall financial health.

**3.** *See Dicken v. Dicken*, 2 Ky. 173, 173 (Ky. 1802) (interest accrues on legacy where exec-

Unifund also directs this Court's attention to other jurisdictions' approaches to similar statutes, specifically Kansas, Missouri, and Washington.[4] As the Sixth Circuit noted in *Stratton,* Missouri's and Washington's statutes do not contain the mandatory "shall be bound" language found in KRS 360.010(1), *id.,* at 448 n. 1; therefore, these statutes are inapplicable to the matter at hand because the absence of mandatory language in these states' statutes allow each state's citizens to contract to an interest rate in excess of the state's usury amount while still preserving their right to collect under the state's usury statute.

In *Bunce v. Portfolio Recovery Associates, LLC,* the United States District Court for the District of Kansas also distinguished KRS 360.010(1) from the Missouri and Washington statutes referred to by Unifund. *Bunce,* No. 14-2149-JTM, 2014 WL 5849252, *4 (D. Kan. Nov. 12, 2014). The Court found that Kansas's usury statute, like Missouri and Washington, lacked the mandatory "shall be bound" language and was, thus, equally inapplicable to Kentucky's statute. *Id.*

"This Court has steadfastly adhered to the plain meaning rule unless to do so would constitute an absurd result." *Exec. Branch Ethics Comm'n v. Stephens,* 92 S.W.3d 69, 73 (Ky. 2002). Here, the statute plainly states that the parties to a contract—and their assignees—"*shall be bound* for such rate of interest as is expressed in any such contract . . . or assumption . . . and no law of this state prescribing or limiting interest rates shall apply to any such agreement or to any charges which pertain thereto . . . ." KRS 360.010(1) (emphasis added). The significance here is that this language—"shall be bound"—extinguishes the right to a statutory interest rate once the parties contract to a rate in excess of the statutory rate.

KRS 360.010(1) provides a default statutory interest rate in the absence of a contractual rate between the parties; any other interpretation requires reading outside the plain language of the statute. Contrary to Unifund's assertion, this sentiment has been embodied in our lower court's precedent: "Absent a contractually agreed upon rate, the appropriate rate of interest is governed by statute." *Reliable Mech., Inc. v. Naylor Indus. Servs., Inc.,* 125 S.W.3d 856, 857 (Ky. Ct. App. 2003).[5]

---

utor fails to pay legatee); *White v. Green,* 19 Ky. 155, 156 (Ky. 1826) (interest accrues on default of contract where the parties did not agree to an interest rate); *Henderson Cotton Mfg. Co. v. Lowell Machine–Shops,* 86 Ky. 668, 7 S.W. 142, 146 (1888) (interest accrues on liquidated debt where the parties did not agree to an interest rate); *Nucor Corp. v. Gen. Elec. Co.,* 812 S.W.2d 136, 141 (Ky. 1991) (trial court has discretion over applying interest to tort damages); *3D Enters. Contr. Corp. v. Louisville & Jefferson Cnty. Metro. Sewer Dist.,* 174 S.W.3d 440, 450 (Ky. 2005) (unliquidated claims accrue interest at the court's discretion where the parties did not agree to an interest rate); and *Jones v. Marquis Terminal, Inc.,* 454 S.W.3d 849, 853 (Ky. App. 2014) (holding that the trial court exercised sound discretion in denying payment of pre-judgment interest

after breach of a rental agreement in which the parties did not agree to an interest rate).

4.  See *Bunce v. Portfolio Recovery Assocs., LLC,* No. 14-2149-JTM, 2014 WL 5849252 (D. Kan. Nov. 12, 2014); *Peters v. Fin. Recovery Servs.,* 46 F.Supp.3d 915, (W.D. Mo. 2014); and *Grochowski v. Daniel N. Gordon, P.C.,* No. C13-343 TSZ, 2014 WL 1516586 (W.D. Wash. Apr. 17, 2014).

5.  In its Reply brief, Unifund cites to *Int'l Collection Serv. v. Walker Constr. Co.,* 1992 WL 205862 (Ky. Ct. App. 1992), an unpublished opinion. This opinion has been withdrawn; thus, Unifund's citing to this case is not only unhelpful to the Court, but is clearly inconsistent with CR 76,28(4)(c). See *Commonwealth v. Wright,* 415 S.W.3d 606, 613–14 (Ky. 2013) (analyzing the requirements of CR 76.28(4)(c)).

We hold that Citibank extinguished its right to statutory pre-judgment interest when it contracted with Harrell to an interest rate in excess of 8%. Subsequently, by forgoing its right to collect contractual interest on Harrell's account, Citibank effectively waived its right to collect the contractual interest. Therefore, Unifund, standing in the shoes of its assignor, has no legal right to collect interest on Harrell's account, be it contractual or statutory.

## B. The FDCPA.

■ Because KRS 360.010(1) does not provide Unifund a right to collect interest on Harrell's account, we now determine whether her counterclaim stated a claim upon which relief may be granted. We hold in the affirmative for the reasons below.

The FDCPA prohibits "false, deceptive, or misleading representations or means in connection with the collection of any debt." 15 U.S.C. 1692e. This prohibition includes "[t]he false representation of . . . the character, amount, or legal status of any debt[,]" *id.* 1692e(2), and "[t]he threat to take any action that cannot legally be taken." *Id.* 1692e(5). Additionally, the FDCPA prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. 1692f.

"Consistent with the Act's expansive reach, both sections [1692e and 1692f] provide a list of unlawful conduct 'without limiting the general application of each section's broad prohibition of 'false or misleading representations' and 'unfair practices.'" *Stratton,* 770 F.3d at 450 (quoting 1692e and 1692f).

The United States Supreme Court has held that the FDCPA "applies to the litigating activities of lawyers." *Heintz v. Jen-*

*kins,* 514 U.S. 291, 294, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995). As that Court noted in *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* 559 U.S. 573, 600, 130 S.Ct. 1605, 176 L.Ed.2d 519 (2010), constraints on a lawyer's advocacy are "hardly unique in our law." For example, "an attorney's ethical duty to advance the interests of his client is limited by an equally solemn duty to comply with the law and standards of professional conduct." *Nix v. Whiteside,* 475 U.S. 157, 168, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986).

■ In determining "whether conduct fits within the broad scope of the FDCPA, the conduct is viewed through the eyes of the least sophisticated consumer.'" *Currier v. First Resolution Inv. Corp.,* 762 F.3d 529, 533 (6th Cir. 2014). The purpose of this standard is to protect "the gullible and the shrewd alike while simultaneously presuming a basic level of reasonableness and understanding on the part of the debtor, thus preventing liability for bizarre or idiosyncratic interpretations of debt collection notices." *Id.*

When viewed through the eyes of the least sophisticated consumer, and by a reading of the plain language of the FDCPA, Harrell clearly alleged more than one plausible violation of the FDCPA. Unifund did not have the right to collect interest on Harrell's debt. By filing its complaint in demand of such interest, Unifund arguably made a "false representation" of the "character" and "amount" of Harrell's debt. 15 U.S.C. 1692e(2). Thus, its suit was arguably an attempt to collect an amount that is neither "expressly authorized" by agreement between the parties nor permitted by law. *See* 15 U.S.C. 1692f(1). Additionally, Unifund's suit to collect 8% on the principal, when viewed from the perspective of the least sophisticated consumer, was arguably a threat "to take action that

cannot legally be taken ....” *See* 15 U.S.C. 1692(e)5.

Therefore, we hold that Harrell plausibly alleged that Unifund violated the FDCPA. As such, we affirm the Court of Appeals decision reversing the circuit court.

## IV. CONCLUSION.

For the reasons stated above, we affirm the opinion of the Court of Appeals, and remand this case to the Nelson Circuit Court for reinstatement of Harrell's counterclaim.

Minton, C.J., Cunningham, Hughes, Keller and Wright, JJ., concur. Venters, J., dissents by separate opinion. VanMeter, J., not sitting.

## VENTERS, J., DISSENTING:

I respectfully disagree with the majority's conclusion that Unifund, standing in Citibank's shoes as its assignee, has no legal right to collect prejudgment interest on Harrell's account from the time Citibank charged off Harrell's account to the point Unifund purchased the debt.[6] With Unifund's rights being derivative of Citibank's, if Citibank was entitled to prejudgment interest, then so is Unifund.

The majority's conclusion follows the error of *Stratton v. Portfolio Recovery Associates, LLC*, 770 F.3d 443, 447 (6th Cir. 2014) in misapplying KRS 360.010(1) for determining when prejudgment interest is awarded. This misconstruction of the applicable law, in effect, punishes banks for their compliance with federal regulations

and it bestows an unearned and undeserved windfall upon delinquent debtors.

When a debtor fails to repay a debt in accordance with the contract, the principal due, including accumulated unpaid interest, becomes a liquidated claim.[7] “When the damages are ‘liquidated,’ prejudgment interest follows as a matter of course.” *Nucor Corporation v. General Electric Co.*, 812 S.W.2d 136, 141 (Ky. 1991). Interest for breach of a contract to pay a certain sum is recoverable as damages from the time the amount is due. *Id.* at 144. “The longstanding rule in this state is that prejudgment interest is awarded as a matter of right on a liquidated demand[.]” *Hall v. Rowe*, 439 S.W.3d 183, 188 (Ky. App. 2014) (quoting *3D Enterprises Contracting Corporation v. Louisville & Jefferson County Metropolitan Sewer District*, 174 S.W.3d 440, 450 (Ky. 2005)).

Whether the debt is unliquidated or liquidated, “[e]quity and justice demand that one who uses money or property of another for his own benefit, particularly in a business enterprise, should at least pay interest for its use in the absence of some agreement to the contrary.” *Curtis v. Campbell*, 336 S.W.2d 355, 361 (Ky. 1960) (citations omitted).

Citibank issued a credit card account to Harrell with an agreed upon contractual interest rate of 26%, and a default rate of 27.24%. Approximately six months after Harrell defaulted on the account, Citibank in compliance with federal banking regulations, “charged off” the $1,472.58 balance due, thus closing Harrell's account, eliminating her right to use the credit card, and

---

6. Pilot Receivables was Unifund's predecessor in interest.

7. “Precisely when the amount involved qualifies as ‘liquidated’ is not always clear, but in general ‘liquidated’ means ‘[m]ade certain or fixed by agreement of parties or by operation of law.’ *Black's Law Dictionary* 930 (6th ed. 1990). Common examples are a bill or note past due, an amount due on an open account, or an unpaid fixed contract price.” *Nucor Corporation v. General Electric Co.*, 812 S.W.2d 136, 141 (Ky. 1991).

fixing the principal balance owed. Upon the closing of the account, Citibank stopped sending monthly or periodic statements to Harrell because Harrell could make no new charges on the account and interest was no longer accumulating at the contractual rate. The amount was a liquidated sum as of the date the account was charged off and closed.

Charging off a debt is not an abandonment of the claim against the debtor. It is simply an accounting mechanism that serves two purposes. First, federal banking regulations require banks to charge off delinquent accounts at a certain point so that the bank's net worth cannot be unreasonably inflated by a portfolio of assets (debts owed to the bank) that cannot be realistically collected. Second, charging off the account eliminates further use of the credit card and thus fixes the amount of the principal owed by the debtor to the bank as a liquidated debt. At that point, accrual of contractual interest terminates and the period for assessing prejudgment interest begins.

Much has been said about KRS 360.010, but KRS 360.010 governs only the contractual rate of interest, and it embodies the general rule stated in *Clark v. Life & Casualty Ins. Co.*, 245 Ky. 579, 53 S.W.2d 968, 969 (1932): "the measure of recovery for the failure to pay money is the amount agreed to be paid with legal interest, if no other rate is agreed upon; but, where there is an agreed rate of interest, then the measure of recovery would be the amount agreed to be paid with the agreed rate of interest, if not usurious." To be sure, KRS 360.010(1) is a usury statute and it sets limiting parameters on the contractual rate of interest, albeit fairly high ones. Nevertheless, the statute has no application here because it is recognized that Citibank's assignee Unifund does not purport to have the right to collect the con-

tractual rate on interest. It seeks to recover prejudgment interest on the liquidated debt.

There is no doubt that Citibank, and therefore its assignee, Unifund, could not continue to apply the contractual rate of interest after the account was closed and periodic account statements ceased. Harrell's counterclaim that Unifund's demand that he pay interest on his debt violated the Fair Debt Collection Practices Act (FDCPA) was properly rejected by the trial court. The trial court correctly recognized the difference between the right to collect the contractual interest and the right to collect prejudgment interest. The forfeiture of the former does not portend the loss of the latter. The trial court correctly concluded that pursuant to 12 C.F.R. Sec. 226.5(b)(2)(i), when Citibank stopped sending periodic statements to Harrell when the account was charged off, and could no longer charge additional fees or collect the contractual interest on the account, nothing forecloses the right to collect prejudgment interest on the liquidated debt.

I see nothing in the applicable statutes or regulations that compels the forfeiture of something as solidly-established and long-recognized as a creditor's right to prejudgment interest. The trial court in this action and the dissenting judge in *Stratton* correctly analyzed the situation. Unifund's claim for prejudgment interest is a well-established remedy in securing a just resolution of an unpaid liquidated debt. Unifund's demand for it is not deceptive, unfair, or unconscionable under the FDCPA. The trial court did not err when dismissing Harrell's counterclaim. I would affirm the trial court.