RENDERED:  FEBRUARY 9, 2024; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1371-MR

KEVIN MEIER                                                                    APPELLANT

v.           APPEAL FROM BOONE CIRCUIT COURT
             HONORABLE JAMES R. SCHRAND, II, JUDGE
             ACTION NO. 21-CI-00710

JEFF WYLER ALEXANDRIA, INC.
AND JEFF WYLER AUTOMOTIVE
FAMILY, INC.                                                                   APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, JONES, AND TAYLOR, JUDGES.

CALDWELL, JUDGE:  Kevin Meier (Meier) appeals from a summary judgment

dismissing his claims of illegal wage deductions.  We affirm.

## FACTS

Meier worked as a car salesman at a Jeff Wyler[1] dealership for a few

---

[1] Meier worked at the Jeff Wyler dealership in Florence before filing suit against Appellees Jeff Wyler Alexandria, Inc. and Jeff Wyler Automotive Family, Inc.  The Appellees argued to the trial court that Jeff Wyler Automotive Family, Inc. was not Meier's employer.  The trial court

years.  Meier was paid a set amount twice monthly as a "draw" against anticipated commissions.

Meier could also earn additional amounts in commissions and bonuses under a written pay plan.[2]  However, the additional payments for commissions and bonuses could be reduced in certain situations – such as for imperfect customer service surveys or an unsatisfactory mystery shopper assessment.  For example, a salesperson could earn a $100 bonus for a perfect customer service survey or a $200 deduction for an imperfect customer survey.  A salesperson could also incur bonuses or deductions based on the percentage of potential trade-in sales which actually occurred.

Each month, Meier and a manager signed a sheet with calculations of the total additional payment amount due after adding up commissions and bonuses and subtracting amounts for negative factors.  Meier later stated it was unclear from the sheets how the net total for a customer service or mystery shopper bonus

---

noted the argument but did not resolve any dispute on this issue.  Instead, it granted summary judgment on other grounds.  As the parties did not substantively argue whether either Appellee was Meier's employer in their appellate briefs, we need not address this issue.  We collectively refer to the Appellees as Jeff Wyler for brevity.

[2] Relevant to the present case, Meier worked for Jeff Wyler from late 2016 until June 2020.  He signed a written pay plan, which had taken effect in 2013.  A new written pay plan with some additional provisions became effective in 2018.  And Meier also participated in a mystery shopper assessment program which was not described in either written pay plan.  Meier does not claim that he did not agree to any pay plan provisions or the terms of the mystery shopper assessment program.

was calculated – such as whether a certain bonus due reflected just a bonus for a singular event or multiple bonuses reduced by negative factors. Meier admitted that as far as he knew, he received the payments for amounts calculated on these sheets signed by him and a manager. But he later perceived that reductions in his earnings for factors such as imperfect customer service surveys or failing mystery shopper assessments violated Kentucky law.

Meier filed suit, claiming that Jeff Wyler assessed deductions which were fines prohibited by law. Meier filed a motion for partial summary judgment, requesting that the trial court hold that "pay deductions" for imperfect customer service surveys, failed mystery shopper assessments, and "low conversion rates on potential trade-in deals" were unlawful fines violating KRS[3] 337.060(2).

Jeff Wyler filed a response to Meier's partial summary judgment along with its own motion for summary judgment seeking dismissal of Meier's claims. Following briefing and a hearing, the trial court denied Meier's motion for partial summary judgment, granted summary judgment in Jeff Wyler's favor, and dismissed Meier's lawsuit. Meier appealed.[4]

Further facts will be discussed as needed.

---

[3] Kentucky Revised Statutes.

[4] Although Meier filed the trial court action along with co-plaintiff Brandon Niehaus, Niehaus did not appeal from the trial court's granting summary judgment in favor of Jeff Wyler.

# ANALYSIS

## Standard of Review

An appellate court must review a trial court's interpretation of statutes and its grant of summary judgment *de novo* (without deference) on appeal. *Dolt, Thompson, Shepherd & Conway, P.S.C. v. Commonwealth ex rel. Landrum*, 607 S.W.3d 683, 686-87 (Ky. 2020).

In reviewing the grant of summary judgment, we also consider whether the trial court correctly determined that no genuine issues of material fact exist and that the moving party was entitled to judgment as a matter of law. *See id.* at 686; CR[5] 56.03. We also keep in mind the trial court's obligation to view the evidence in the light most favorable to the opposing party and to determine if genuine issues of material fact exist – but not to decide issues of fact – when faced with a motion for summary judgment. *See Shelton v. Kentucky Easter Seals Soc., Inc.*, 413 S.W.3d 901, 905 (Ky. 2013).

Although determining if genuine issues of material fact exist is clearly a key part of ruling on a motion for summary judgment, Meier's appellate briefs do not clearly identify any particular factual disputes. However, Meier states in his reply brief: "Contrary to Jeff Wyler's assertion, Mr. Meier does indeed dispute Jeff Wyler's interpretations of when and how wages are earned."

---

[5] Kentucky Rules of Civil Procedure.

In sum, there appear to be no direct disputes about specific facts. However, despite the lack of dispute about specific facts, the parties disagree about whether bonuses were earned at the end of the month upon performing all calculations or whether bonuses were earned immediately upon the occurrence of certain events such as a perfect customer service survey. The parties also disagree about the proper construction and application of Kentucky wage and hour statutes.

**Overview of Applicable Statutes**

This case hinges on application and interpretation of Kentucky wage and hour statutes, which are set forth in KRS Chapter 337. We quote those provisions argued by the parties regarding Meier's illegal wage deduction claims.

KRS 337.010(1)(c)1. states:

> "Wages" includes any compensation due to an employee by reason of his or her employment, including salaries, commissions, vested vacation pay, overtime pay, severance or dismissal pay, earned bonuses, and any other similar advantages agreed upon by the employer and the employee or provided to employees as an established policy.

KRS 337.060(1) states: "No employer shall withhold from any employee any part of the wage agreed upon" except for certain enumerated exceptions, such as authorized deductions to cover insurance premiums, which are inapplicable here.

KRS 337.060(2)(a) provides: "Notwithstanding the provisions of subsection (1) of this section, no employer shall deduct the following from the wages of employees: (a) Fines[.]"[6]

**Trial Court Resolved Legal Arguments in Jeff Wyler's Favor**

In granting summary judgment dismissing Meier's claims, the trial court accepted Jeff Wyler's argument that no illegal deductions occurred. Like Jeff Wyler, the trial court construed KRS 337.060(1) and (2) together to only prohibit deductions from "wages agreed upon" rather than from all wages.

In addition to arguing there was no deduction from an agreed-upon wage, Jeff Wyler alternatively argued there was no fine. Jeff Wyler contended that deductions incurred for negative factors as part of an agreed-upon method for calculating wages were not fines. Meier disagreed, arguing that deductions for negative factors were fines violating KRS 337.060(2)(a) even if a written pay policy provided for these deductions. The trial court did not address whether any subtractions for various factors in Jeff Wyler's bonus calculations amounted to fines.

---

[6] In addition to prohibitions against deductions for fines in KRS 337.060(2)(a), KRS 337.060(2)(b)-(e) also forbids, notwithstanding subsection 1 of this statute, making deductions from employees' wages for matters such as cash shortages in a cash register used by two or more people, breakage, and losses due to customers' dishonored checks, faulty workmanship, or stolen property. It is undisputed that there were no deductions from Meier's wages for the matters mentioned in KRS 337.060(2)(b)-(e).

Instead, the trial court determined that KRS 337.060 only prohibited deductions from agreed-upon wages and that, under the largely undisputed facts, there was no deduction from the wages agreed upon here. First, the trial court quoted both KRS 337.060(1) and KRS 337.060(2)(a). It noted: "Subsection (1) begins with the prohibition of withholding wages agreed upon from employees, and subsequently addresses exceptions to this prohibition." And it interpreted the word "notwithstanding" in KRS 337.060(2) "as applying to the exceptions listed in subsection (1)." It concluded there was no conflict between these first two subsections of KRS 337.060 and that KRS 337.060 simply did not apply to wages which were not agreed upon by the employee and employer, stating:

> Both the first sentence of subsection (1) and subsection (2) prohibit an employer from withholding/deducting an employee's wages, and thus they are not in conflict or contradiction. In order for compensation to be due to an employee, the statute requires that there must have been an agreement between the employee and the employer as to what that compensation will be. Thus, the statute cannot be interpreted as to be inclusive of wages not agreed upon.

The trial court also stated:

> The Court finds that the parties did not have an agreed upon wage, but rather a calculation as to what their wage would be. This calculation factored in the employees' commissions, as well as categories for unit and miscellaneous bonuses that included both additions and deductions pursuant to their payment plan agreement, which resulted in the final calculation of the employees' wages. See Exhibit A to Defendants'

-7-

Response and Motion.[7] The Court finds that the bonuses were not considered earned until after the calculation produced the Plaintiffs' wages after considering the factors agreed upon by the parties, and therefore there were no deductions from either of the Plaintiffs' calculated wages.

The trial court determined there was no agreed-upon wage but simply an agreed-upon method for calculating wages which took into consideration additions and deductions for positive and negative factors. It also determined that bonuses were not earned until after wages were calculated after considering both positive and negative factors agreed to by the parties. It concluded that no deductions from wages had occurred.

On appeal, Meier argues the trial court misinterpreted legal authority and erred in concluding Jeff Wyler was entitled to judgment as a matter of law.[8]

---

[7] The trial court appears to be referring to the deposition of co-plaintiff Brandon Niehaus here. The supporting memorandum to Jeff Wyler's response in opposition to plaintiff's motion for partial summary judgment and Jeff Wyler's motion for summary judgment states that Niehaus' deposition was attached as Exhibit A. (Record (R.), p. 47).

[8] Despite the trial court's repeated use of the word "find" in discussing its resolution of the issues before it, Meier has not claimed on appeal that the trial court improperly made factual findings rather than simply determining whether genuine issues of material fact existed. *See Shelton*, 413 S.W.3d at 905. Instead, Meier's appellate briefs argue the circuit court misconstrued legal authority in concluding that Jeff Wyler was entitled to judgment as a matter of law.

**Trial Court Possibly Erred in Presuming KRS 337.060(2)'s Enumerated Prohibited Deductions Only Applied to Agreed-Upon Wages, but Any Such Error is Harmless Under the Undisputed Facts Here**

Meier argues the trial court erred in holding that KRS 337.060(2) only prohibits deductions from agreed-upon wages. Meier asserts that KRS 337.060(1) provides protection for agreed-upon wages, but that KRS 337.060(2) provides protection for all wages. Meier argues that even if the parties agreed to reduce earnings for certain factors under the pay plan, such reductions were forbidden under KRS 337.060(2).

Meier contends the legislature defined *wages* more broadly than agreed-upon wages. He points to KRS 337.010(1)(c)1., which defines *wages* as including "any compensation due to an employee by reason of his or her employment" such as salaries, commissions, "earned bonuses[,]" and "other similar advantages agreed upon by the employer and the employee or provided to employees as an established policy."

Meier argues KRS 337.060(2) must be interpreted as written, without adding any other language, to prohibit certain deductions from wages. So, he asserts the trial court erred in construing KRS 337.060(2) to prohibit only deductions from agreed-upon wages.

Meier asserts there is no conflict between KRS 337.060(1) and (2). He argues the use of "notwithstanding subsection (1)" in KRS 337.060(2) means

that certain deductions from wages are prohibited regardless of whether there is an agreement about wages. He points to case law interpreting *notwithstanding* as meaning "in spite of" or "without prevention or obstruction from or by." *See Landrum v. Commonwealth ex rel. Beshear*, 599 S.W.3d 781, 791 (Ky. 2019). He also directs our attention to a quote from *Bloyer v. Commonwealth*, 647 S.W.3d 219 (Ky. 2022): "[N]*otwithstanding* is a fail-safe way of ensuring that the clause it introduces will absolutely, positively prevail." *Id*. at 225 (quoting ANTHONY SCALIA & BRYAN GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 127 (2012)).

In response to Meier's argument that "notwithstanding subsection (1)" in KRS 337.060(2) means that KRS 337.060(1)'s limitation to agreed-upon wages does not apply, Jeff Wyler argues that *notwithstanding* simply shows which provision prevails in the event of a clash. But Jeff Wyler asserts there is no clash between KRS 337.060(1) and KRS 337.060(2) because KRS 337.060 as a whole only applies to agreed-upon wages.

Jeff Wyler also points out that despite the mention of "wages" without the qualifier "agreed upon" in KRS 337.060(2), for purposes of KRS Chapter 337, *wages* are defined in KRS 337.010(1)(c)1. as "any compensation due to an employee" for his/her employment "agreed upon by the employer and the employee or provided to employees as an established policy." Jeff Wyler argues

that KRS 337.060(2) implicitly refers to wages agreed upon or provided as an established policy. And it asserts that the evidence shows that Meier received all wages agreed upon or provided under an established policy.

Meier suggests employers and employees are free to negotiate agreements about compensation, but that employers may not make certain deductions such as fines from an employee's wages – even if the employee has supposedly agreed to a pay plan permitting such deductions.[9] He contends the trial court's holding that KRS 337.060(2) only prohibits deductions from agreed-upon wages clearly contradicts the language of the statute.

Whether KRS 337.060(2)'s prohibition against certain enumerated deductions such as fines applies to all wages or simply to all wages agreed upon is an issue unresolved by binding precedent from Kentucky appellate courts. However, a published opinion from this Court suggests that KRS 337.060 as a whole applies only to agreed-upon wages, since we stated: "The statute makes it unlawful for the employer to withhold 'any part of *the wage agreed upon*.'"

---

[9] Meier cites for our consideration an unpublished federal district court opinion which he characterizes as construing KRS 337.060(2) as prohibiting deductions from wages for breakage or other property damages despite any employer/employee compensation agreement supposedly authorizing such deductions. *See Henderson v. Pieratt's, Inc.*, No. 5:17-CV-377-JMH, 2019 WL 1903398, at *8 (E.D. Ky. Apr. 29, 2019) (unpublished). However, this is not binding authority. *See Unifund CCR Partners v. Harrell*, 509 S.W.3d 25, 28 (Ky. 2017) (federal court opinions construing state law in diversity actions are not binding on Kentucky courts although Kentucky courts may consider them as persuasive authority). *See also* Kentucky Rule of Appellate Procedure (RAP) 41(B) ("Unpublished opinions from other jurisdictions are not binding precedent and citation of these opinions is disfavored.").

-11-

*Grossl v. Scott Cnty. Fiscal Court*, 566 S.W.3d 221, 224 (Ky. App. 2018)[10] (quoting with added emphasis KRS 337.060(1)). But this Court did not specifically consider whether KRS 337.060(2) applied only to agreed-upon wages in *Grossl*.

Similarly, there was no alleged KRS 337.060(2) violation in two unpublished opinions which were cited for this Court's consideration in both parties' briefs.[11] Perhaps the language of these unpublished opinions suggests that KRS 337.060 as a whole only applies to agreed-upon wages,[12] though such unpublished opinions are not binding authority. And in any event, neither of these two unpublished opinions specifically addressed KRS 337.060(2) at all.

---

[10] Our Supreme Court denied discretionary review of our opinion in *Grossl*, 566 S.W.3d at 221, on February 7, 2019.

[11] RAP 41(A) clearly states that Kentucky state appellate opinions not designated for publication are not binding authority and that citation of such unpublished opinions is disfavored. RAP 41(A) also sets forth certain requirements for citing such unpublished opinions for consideration in appellate briefs. Though some of these requirements appear to be met by the parties' briefs, both parties failed to comply with RAP 41(A)(4)'s requirement that one clearly state that the opinion is not binding authority when citing an unpublished opinion for this Court's consideration. We leniently elect to impose no sanctions for the parties' failure to comply fully with RAP 41(A)(4).

[12] *See Bahil v. Flexsteel Industries, Inc.*, No. 2019-CA-000064-MR, 2019 WL 6998646, at *2-3 (Ky. App. Dec. 20, 2019), *discretionary review denied* (Apr. 22, 2020) (unpublished) (agreeing with trial court's conclusion that KRS 337.060 did not apply to *bona fide* disputes about wages but only to agreed-upon wages, and affirming summary judgment granted due to lack of agreement about wages where parties had different understandings of whether an old pay system or a new pay system applied); *Kimmel v. Progress Paint Mfg. Co.*, No. 2002-CA-000273-MR, 2003 WL 1226837, at *3 (Ky. App. Jan. 10, 2003) (unpublished) ("Here, the agreed wage is in dispute; thus, we do not think KRS 337.060(1) applicable. Simply put, we do not believe the legislature intended KRS 337.060 to apply where there exists a *bona fide* dispute concerning wages.").

-12-

In contrast, another unpublished opinion from this Court reviewed a trial court's determination that a violation of KRS 337.060(2)(e) occurred.[13] We reversed, noting that KRS 337.060(1) only prohibited deductions from agreed-upon wages and that the reductions in wages at issue had been agreed to by both parties under a compensation plan.[14]

As Meier points out, we did not discuss the effect of "notwithstanding the provisions of subsection (1) of this section" language in KRS 337.060(2) in that unpublished case. Meier suggests this may have been one of the reasons the Kentucky Supreme Court granted discretionary review in that case. However, since the Supreme Court case was dismissed on motion following the grant of

---

[13] *See AT&T Corp. v. Fowler*, Nos. 2006-CA-000402-MR & 2006-CA-000535-MR (Ky. App. Oct. 19, 2007), *discretionary review granted* (Oct. 15, 2008) (unpublished), page 5 of slip opinion available as a searchable opinion on the Kentucky Court of Justice website, kycourts.net. *See* Kentucky Supreme Court Opinions (kycourts.net) and click search under case number No. 2006-CA-00535 (Last accessed Jan. 5, 2024). Unfortunately, the text of *Fowler* is not available on Westlaw. According to court records, the *Fowler* Kentucky Supreme Court case was later dismissed upon motion.

[14] *Fowler* slip opinion at page 7. After noting that employees agreed to deductions in certain circumstances under the terms of a compensation plan, we held:

> The purpose of the statute is to prevent employers from recouping their losses from wages that they have agreed to pay their employees. By signing and acknowledging their acceptance of the Compensation Plan, the appellees agreed upon a particular wage which included a fixed salary plus commissions subject to certain conditions. This arrangement does not violate the letter or the spirit of the statute, since AT&T was not withholding any amounts that had not been agreed upon under the terms of the Compensation Plan.

*Id*. at page 7.

-13-

discretionary review, our Supreme Court did not construe the "notwithstanding" clause in KRS 337.060(2) or determine whether KRS 337.060(2) only applied to agreed-upon wages.

Though clarification from our Supreme Court on these matters would certainly be welcome, we cannot say that we entirely agree with the trial court's construction of KRS 337.060 upon *de novo* review. Notably, the trial court interpreted the term *notwithstanding* in KRS 337.060(2) as referring to the **exceptions** stated in KRS 337.060(1). But the word *exceptions* does not follow *notwithstanding* in KRS 337.060(2); instead, KRS 337.060(2) begins with the clause "notwithstanding the **provisions**" (emphasis added) of KRS 337.060(1) before forbidding certain deductions from wages including fines. But KRS 337.060(1) does not just contain one provision identifying exceptions to a rule. Instead, it also contains provisions generally prohibiting employers from withholding any part of an employee's agreed-upon wages and specifically prohibiting, after a certain date, collective bargaining agreement provisions calling for deductions from wages without employees' written consent.

Although we do not share the trial court's view of the term *notwithstanding* in KRS 337.060(2) as only referring to the exceptions in KRS 337.060(1), we ultimately conclude that the trial court reached the proper result albeit based on different grounds supported by the record. *See Mark D. Dean,*

*P.S.C. v. Commonwealth Bank & Tr. Co.*, 434 S.W.3d 489, 496 (Ky. 2014) ("If an appellate court is aware of a reason to affirm the lower court's decision, it must do so, even if on different grounds."). Since the trial court ultimately reached the proper result, any error in its interpretation of the statutory language of KRS 337.060(2) is harmless. *See* CR 61.01.

**Trial Court Reached Proper Result as There Was No Fine Under These Facts**

Assuming *arguendo* that KRS 337.060(2) prohibits an employer's taking the types of deductions specified therein even though the employee agreed to such deductions being taken, the deductions here were not fines. Meier cites KRS 446.015 for the proposition that words in statutes must be interpreted according to common usage and suggests that people commonly use the word *fine* to refer to any requirement that someone pay an amount as a punishment.

We note that KRS 446.015 states that any statute enacted after mid-June 1978 must not use technical terms and will be construed according to common usage. KRS 337.060 has been amended several times but was originally enacted in 1942.

Meier argued to the trial court that the common meaning of a *fine* is a "sum imposed as a punishment" according to https://merriam-webster.com /dictionary/fine (last accessed Feb. 5, 2024). Though Meier cites KRS 446.015 to argue that *fine* should be construed according to a common meaning, Meier does

not address KRS 446.080(4), which states: "All words and phrases shall be construed according to the common and approved usage of language, but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed according to such meaning."

Unfortunately, the word *fine* is not defined in KRS Chapter 337 nor elsewhere in the Kentucky Revised Statutes. Perhaps some people may colloquially use the term *fine* to refer to any sort of pecuniary punishment. But *fine* has developed a particular meaning under the law, connoting not just any payment but a payment to a public authority as a type of punishment for criminal activity or as a remedy for a civil wrong. For example, BLACK'S LAW DICTIONARY (11th ed. 2019) defines a *fine* as a: "pecuniary criminal punishment or civil penalty payable to the public treasury." And based on our recent review, the Merriam-Webster website defines a *fine* as: "a sum imposed as punishment for an offense" or "a forfeiture or penalty paid to an injured party in a civil action" in addition to noting some more obscure definitions of the noun *fine*. *See* https://merriam-webster.com/dictionary/fine (last accessed Jan. 5, 2024).[15] And long-standing Kentucky precedent essentially defined a *fine* as a court-imposed sum to be paid for a criminal offense. *Commonwealth v. French*, 130 Ky. 744, 114

_____

[15] Both BLACK'S LAW DICTIONARY and Merriam-Webster also mention other obsolete definitions of a fine which are obviously not applicable here such as a settlement of a type of lawsuit to determine the true owner of a parcel of land.

S.W. 255, 256 (1908) (discussing legal definitions of a *fine* as pecuniary punishment for a criminal offense which essentially puts an end to the offense).

In sum, the word *fine* has a particular meaning in the law which does not encompass deductions from bonus earnings from one's private employer pursuant to a pay plan to which the employee agreed. Instead, a *fine* is an amount to be paid to the public treasury as a civil or criminal penalty or an amount to be paid as a penalty to an injured party in a civil action. Thus, the deductions here under a pay plan to which Meier agreed are not fines prohibited by KRS 337.060(2) so the trial court properly granted summary judgment – albeit on different grounds.

Other arguments raised by the parties in their appellate briefs which are not discussed in this opinion have been determined to be lacking in merit or not relevant to our resolution of this appeal. And we decline to discuss any further non-binding authority including unpublished Kentucky appellate court opinions and precedent from our sister state courts and from federal courts construing Kentucky state law in diversity cases.

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the Boone Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

David C. Harman
Jessica L. Powell
Cincinnati, Ohio

BRIEF FOR APPELLEES:

Patricia Anderson Pryor
Trevor M. Nichols
Cincinnati, Ohio